**TOUSLEY–BIXLER CONSTRUCTION CO., INC., Appellant (Defendant Below),**

v.

**COLGATE ENTERPRISES, INC., Appellee (Plaintiff Below).**

No. 2–180A25.

Court of Appeals of Indiana, Second District.

Jan. 4, 1982.

Edward O. Delaney, Edwin B. Wainscott, Barnes, Hickam, Pantzer & Boyd, Indianapolis, for appellant.

A. M. Thomas, Thomas Law Firm, Indianapolis, for appellee.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Defendant-appellant Tousley-Bixler Construction Co., Inc. (Tousley-Bixler) appeals from a jury verdict of $42,500 in favor of plaintiff-appellee Colgate Enterprises, Inc. (Colgate), Tousley-Bixler alleging the trial court erroneously concluded that the sale of dirt from Colgate's property was a sale of goods within the meaning of the Uniform Commercial Code.

We reverse and remand for a new trial.

## FACTS

Tousley-Bixler as contractor of a sanitation project for the City of Indianapolis needed clay soil to construct a levee. Colgate's property was located near the construction site, so Fred Lind (Lind) of Tousley-Bixler contacted Colgate about the possibility of purchasing clay. Subsequent tests on Colgate's property revealed that before reaching the approximately four to eight feet of clay beneath the surface, Tousley-Bixler would have to remove about four feet of top soil.

On April 2, 1976, Lind delivered a purchase order to Colgate for 50,000 cubic feet of clay. Discussions then ensued between Tousley-Bixler and Colgate regarding disposal of brush. The purchase order as signed and returned contained an additional statement typed in by Colgate that any

material used in 1976 was to be paid for on or before January 10, 1977.

On receipt of the purchase order with this additional provision typed in, Tousley-Bixler mailed an addendum to cancel the order because of failure to reach agreement on brush removal. Colgate responded by letter in June 1976 that it did not realize there was a problem as to brush removal and for Tousley-Bixler to proceed as originally agreed. Nevertheless, Tousley-Bixler failed to remove any clay.

In an action brought by Colgate for breach of the agreement, the trial court instructed the jury under both the common law and Indiana's version of the Uniform Commercial Code (UCC). The jury found for Colgate, and Tousley-Bixler appeals.

## ISSUE[1]

Did the trial court commit reversible error in instructing the jury under the provisions of the UCC?

PARTIES' CONTENTIONS—According to Tousley-Bixler, the sale of clay soil is not a sale of *goods* within the meaning of Ind. Code subsection 26–1–2–107(1) or 26–1–2–107(2) [hereinafter cited by UCC numbers only], because the clay soil is to be removed by the buyer, not the seller, and because such soil is part of the realty.

Colgate counters that the UCC is a codification of the common law, so no error or prejudice could result from the giving of instructions under both the common law and the UCC. In any event, the UCC is applicable.

CONCLUSION—Giving instructions under the UCC was reversible error.

Buried somewhere in that mountain of words known as the UCC is the answer as to whether clay soil lying four feet below the surface is "goods."

Tousley-Bixler is particularly disturbed because the trial court gave an instruction under a provision of 2–206 (relating to contract formation) which in effect treated the sale of clay as a transaction "in goods."

"Goods" are defined in UCC § 2–105 as

---

1. Because we reverse and remand, other issues raised have not been considered.

"*all things* (including specially manufactured *goods*) which are *movable at the time of identification* to the contract for sale other than the money in which the price is to be paid, investment securities (Article 8) and things in action. *"Goods"* also includes the unborn young of animals and *growing crops and other identified things attached to realty as described in the section on goods to be severed from realty (section 2–107)."*

The term "movable" is somewhat elusive in that virtually anything is movable, even Blackacre, "in the sense that much of the dirt, gravel, water, and minerals that comprise the 'things' called Blackacre can be transported to another location." R. Nordstrom, Handbook of the Law of Sales § 22, at 45 (1970). However, movable is modified by "at the time of identification," and there is further reference to growing crops which can be severed. Considered as a whole, "the words of section 2–105 lose much of their obscurity. The drafters were concerned with items of tangible property which were portable at the time they were set aside for their transfer, *items which normally flow in commerce." Id.* at 46 (emphasis added).[2]

Indicative of the variety of items which may be classified as goods within the meaning of section 2–105 are hoghouses, electricity, mobile homes, growing crops, tomato seeds, and modular homes. *See Thompson Farms, Inc. v. Corno Feed Products,* (1977) 173 Ind.App. 682, 366 N.E.2d 3; *Helvey v. Wabash County REMC,* (1972) 151 Ind.App. 176, 278 N.E.2d 608; *Jones v. Abriani,* (1976) 169 Ind.App. 556, 350 N.E.2d 635; *Sebasty v. Perschke,* (1980) Ind.App., 404 N.E.2d 1200; *Stumler v. Ferry-Morse Seed Co.,* (7th Cir. 1981) 644 F.2d 667; *Stephenson v. Frazier,* (1980) Ind.App., 399 N.E.2d 794. None of these seem similar to the sale of several feet of clay soil lying four feet beneath the surface of the earth.

There is another section which should be read with § 2–105, to-wit, § 2–107. *See*

§ 2–105(1); J. White & R. Summers, Handbook of the Law under the Uniform Commercial Code § 2–2 (2d ed. 1980). Section 2–107 provides in part:

"(1) *A contract for* the sale of timber, minerals or ·the like or a structure or its materials to be removed from realty *is a contract for the sale of goods* within this Article *if they are to be severed by the seller* but until severance a purported present sale thereof which is not effective as a transfer of an interest in land is effective only as a contract to sell.

(2) *A contract for the sale apart from the land of growing crops or other things attached to realty and capable of severance without material harm thereto but not described in subsection (1) is a contract for the sale of goods* within this Article *whether the subject matter is to be severed by the buyer or by the seller* even though it forms part of the realty at the time of contracting, and the parties can by identification effect a present sale before severance." (emphasis supplied)

Comment 1 to § 2–107(1) emphasizes that 2–207(1) "applies only if the timber, minerals or structures 'are to be severed by the seller'. If the buyer is to sever, such transactions are considered contracts affecting land and all problems of the Statute of Frauds and of the recording of land rights apply to them." *Id.* It is to be remembered that buyer Tousley-Bixler was to remove the clay from seller Colgate's property.

■ Thus, the UCC considers the sale of some items affixed to real estate as a sale of goods if they are to be severed by the seller, *i.e.,* "timber, minerals or the like or a structure or its materials." If the seller is to sever the items from the real estate, they are treated as goods because they would more likely be intended for sale after severance. The protections reserved for the sale of real estate would not be necessary.

---

**2.** The comment to 2–105, explains that growing crops are goods because "they are frequently intended for sale."

On the other hand, if the buyer is to sever the items, there is a good reason for not applying the UCC to the transaction: "A lease of land ought not be converted into a contract for the sale of goods even though the lessee in possession is given the privilege of removing a part of the realty—such as its *gravel,* coal or oil. Lawyers have too long thought of such an arrangement as a lease with all the intended duties of recording determined under real estate statutes." R. Nordstrom, *supra,* at 48 (emphasis added). Williston makes much the same point in his treatise on sales:

> "Common law and sales law have not treated goods and realty to be one and the same. Real estate has been the subject matter of its own well developed law, including among other things, recording statutes, title statutes and other related real property law all dependent upon the locus of the land. Sales law, however, hinges on commercial fluidity which has in turn necessitated a modification of the law to promote uniformity and to facilitate the expanding and transient market for goods."

A. Squillanti & J. Fonseca, 1 Williston on Sales § 6–6, at 170 (4th ed. 1973).

The distinction between personalty and realty is important. In view of the express language of § 2–107, we fail to see how Colgate's intended sale of dirt was a sale of goods. It is undisputed that seller Colgate was not to sever the goods for buyer Tousley-Bixler. So we conclude that the sale of several feet of clay soil, which could only be reached by removing several feet of top soil, was a sale of "mineral or the like." *See* § 2–107(1).

For over 100 years Indiana law has treated such sales as transactions affecting realty. *See Owens v. Lewis,* (1874) 46 Ind. 488 (growing trees); *Armstrong v. Lawson,* (1881) 73 Ind. 498 (growing trees); *Callihan v. Bander,* (1947) 117 Ind.App. 467, 73 N.E.2d 360 (oil and gas lease); *Creasey v. Pyramid Coal Corp.,* (1945) 116 Ind.App. 124, 61 N.E.2d 477 (conveyance of coal, *clay,* and minerals).

Colgate cites us to no precedent leading to a contrary conclusion, whereas Tousley-Bixler directs us to *DeLuca v. C. W. Blakeslee & Sons, Inc.,* (1978) 174 Conn. 535, 391 A.2d 170. In *DeLuca* the Supreme Court of Connecticut pointed out that § 2–107(1) "made a significant distinction between instances where the subject of the profit a prendre was to be severed from the realty by the seller rather than the buyer." *Id.* 391 A.2d at 173. Because the agreement in that case "provided that the buyer of fill dirt should remove it from the plaintiff's land . . ., the [trial] court properly concluded to be enforceable it was necessary that the alleged agreement conform to the Statute of Frauds affecting the transfer of an interest in land." *Id.* 391 A.2d at 174.

Unavailing is Colgate's attempt to avoid the effect of § 2–107(1) by arguing that the sale of dirt was a sale of goods within the meaning of subsection 2–107(2). Subsection 2 only applies if the items are "not described in subsection (1)." Having concluded that the sale of clay soil is described in subsection 1, we are undeterred in our conclusion that the sale was not a sale of goods within the meaning of the UCC. So the trial court should not have given instructions based on the UCC which conflicted with the common law.

Although it was error for the trial court to give UCC instructions conflicting with the common law and which were not supported by the evidence, *see Chaney v. Tingley,* (1977) Ind.App., 366 N.E.2d 707, to obtain reversal Tousley-Bixler has the burden of proving prejudicial error. *Lewis v. Davis,* (1980) Ind.App., 410 N.E.2d 1363; *Pardue v. Seven-Up Bottling Co.,* (1980) Ind.App., 407 N.E.2d 1154. Prejudice is not presumed when erroneous instructions are given over objection if the jury has unquestionably reached the right result, *see Lewis v. Davis, supra; Pardue v. Seven-Up Bottling Co., supra; Vernon Fire & Casualty Insurance Co. v. Sharp,* (1974) 161 Ind.App. 413, 316 N.E.2d 381, but we cannot say that the jury unquestionably reached the right result in finding for Colgate.

The jury was given conflicting instructions regarding contract formation. Final instruction number 6 told the jury that the applicable law was the mirror image principle of counterproposals found in the common law. Final instruction 11, on the other hand, told them that UCC § 2–207, pertaining to additional terms in acceptance or confirmation, was the applicable law.

Instruction 6:

"*Under the law such an offer expires if a counterproposal to the offer is made* or if an unreasonable time has passed before it is accepted.

*A counterproposal includes any proposal by the person receiving the offer that the terms of the offer be changed.* A reasonable time for accepting an offer is such time as a reasonable person receiving the offer would believe to be satisfactory to the person making the offer. The purpose of the person making the offer, if known by the person receiving it, affects what is a reasonable time for acceptance." (Emphasis added).

Instruction 11:

"(1) *A definite and seasonable expression of acceptance* or a written confirmation which is sent within a reasonable time *operates as an acceptance even though it states terms additional to or different from those offered or agreed upon*, unless acceptance is expressly made conditional on assent to the additional or different terms.

(2) *The additional terms are to be construed as proposals for addition to the contract.* Between merchants such terms become part of the contract unless:

  (a) the offer expressly limits acceptance to the terms of the offer;

  (b) they materially alter it; or

  (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received." (Emphasis added).

The two instructions were conflicting. Instruction 6 states that the original offer expires if changed or additional terms are proposed, whereas Instruction 11 says additional proposals may become part of the contract. The evidence could support a jury finding under either instruction with differing results. There is no way of knowing if the jury reached the right result under these circumstances. So Tousley-Bixler was prejudiced by the giving of erroneous instructions based on the UCC and is entitled to a new trial with proper instructions.

Reversed and remanded for a new trial.

SHIELDS and SULLIVAN, JJ., concur.