**DePUGH et al., Appellants,**

v.

**MEAD CORPORATION, Appellee.**

[Cite as *DePugh v. Mead Corp.* (1992), 79 Ohio App.3d 503.]

Court of Appeals of Ohio,
Ross County.

No. 1798.

Decided April 30, 1992.

504

506

*Spetnagel & Benson* and *Thomas M. Spetnagel,* for appellants.

*Bieser, Greer & Landis* and *David P. Williamson,* for appellee.

HARSHA, Judge.

Plaintiffs, Ray E. and Jo Ann DePugh, appeal the trial court's grant of summary judgment in favor of the Mead Corporation, defendant-appellee, on a complaint which sought recovery on breach of contract, promissory estoppel, and quantum meruit.

Appellants assign the following error:

"I. The trial court erred in granting the Mead Corporation's motion for summary judgment since the contract at issue herein did not fall within the Statute of Frauds."

On July 13, 1990, appellants filed a complaint naming appellee as the defendant and setting forth claims of relief for breach of contract, promissory estoppel, and quantum meruit. Appellants' complaint, as subsequently amended, provided, in pertinent part, as follows. On September 1, 1989, the parties entered into a contract whereby appellants agreed to grant appellee a license and right to enter upon and use property owned by appellants to

excavate, remove and purchase up to 225,000 cubic yards of clay. Appellee agreed to pay appellants $100,000 and further agreed to restore, seed and mulch the property, construct a gravel road on the property, and construct a lake on the property. In reliance upon this contract, appellants incurred expenses in obtaining surveys, site plans, and title search. Appellee failed to comply with any part of the contract. Appellants' amended complaint prayed for compensatory damages and prejudgment interest. Appellee filed an answer which denied any contract and asserted that appellants' breach of contract claim was barred by the Statute of Frauds.

On February 8, 1991, appellee filed a motion for partial summary judgment on the basis that appellants' breach of contract claim was barred by the Statute of Frauds. Attached to appellee's motion was an affidavit of Daniel W. Haubeil, an employee of appellee, in which he stated that: (1) on behalf of appellee, he entered into oral negotiations with appellants concerning the entry by appellee upon property owned by appellants, and the subsequent excavation, removal, and purchase of clay by appellee from appellants; (2) the clay was to be purchased for use as cover material for Mead's Paint Street landfill in Chillicothe in compliance with directives and standards set forth in the Ohio Administrative Code and by the Ohio Environmental Protection Agency; (3) no written agreement concerning the purchase from appellants of clay was signed by any representative of appellee; and (4) no representative of appellee received a written deed or note signed by appellants assigning or granting to appellee any interest in any land owned by them.

Appellants subsequently filed a memorandum in opposition to appellee's motion for partial summary judgment. Attached to appellants' memorandum was an affidavit of appellant Ray E. DePugh in which he stated as follows: (1) he received oral and written offers from appellee to enter into a contract and he verbally accepted the offers; (2) the parties contracted for a license under the terms of which appellee agreed to excavate and remove clay from real property owned by appellants for the purpose of constructing a lake and appellee further agreed to construct a gravel road and to restore, seed, and mulch appellants' property; (3) in return for appellee's agreed services, appellants agreed to provide the excavated clay at approximately fifty percent below market price; (4) that a written "Borrow Agreement" was the final written offer tendered by appellee to appellants; and (5) appellants entered into the contract with appellee for the primary purpose of improving their land and the construction of the lake would have alone cost approximately $50,000.

Also attached to appellants' memorandum were a "BORROW AGREE-MENT" and an October 19, 1989 letter from a representative of appellee to appellants. The "BORROW AGREEMENT" stated that "DePugh desires to

sell and Mead desires to excavate, remove and purchase clay from the Property to be used as a cover to seal Mead's Paint Street landfill" and further provided, in pertinent part, as follows:

"2. *Sale of Borrow.* DePugh hereby grants to Mead the license and right to enter upon and use the Property (and any easements and access rights relating thereto) to excavate, remove and purchase Borrow and to restore, seed and mulch the Property as provided herein until such operations are completed. All restoration shall be completed within six months after completion of the removal of the Borrow. DePugh hereby agrees to sell up to 225,000 cubic yards of Borrow to Mead so that Mead may cover the Paint Street landfill. Mead shall pay DePugh a lump sum of One Hundred Thousand Dollars ($100,000.00) for any and all Borrow removed up to 225,000 cubic yards. No Borrow shall be removed in excess of 225,000 cubic yards except with the consent and on terms acceptable to both DePugh and Mead. Mead shall pay DePugh within ten days of the completion of the removal of the Borrow. This Agreement is a requirements contract.

"* * * *

"16. *Contingencies.* This Agreement and the obligations of the parties described herein are contingent upon the approval by the Ohio Environmental Protection Agency to the closure plan submitted by Mead to the Ohio EPA for the Paint Street landfill, including the use by Mead of Borrow from the Property."

The "BORROW AGREEMENT" additionally provided, *inter alia*, that appellee would: (1) remove obstructions and construct a gravel road prior to excavation of any clay; (2) stockpile topsoil during the excavation of borrow underneath the topsoil; (3) leave a lake within the borrow area; and (4) replace, seed and mulch the area. The "BORROW AGREEMENT" was not signed by any of the parties.

The October 19, 1989 letter to appellants from Ralph E. Shoemaker, the purchasing manager of appellee, noted that it was in regard to the "Proposed Clay Purchase" by appellee from appellants. The letter provided, in pertinent part, as follows:

"You and The Mead Corporation have agreed to settle the dispute with respect to the proposed Borrow Agreement whereby The Mead Corporation considered purchasing clay from you for use in capping its Paint Street landfill. This letter is to confirm our agreement with respect to such settlement as follows:

"* * * *

"3. The rights and obligations described in the proposed Borrow Agreement are hereby terminated and shall be of no further force and effect. * * * *"

Appellee filed a reply memorandum in further support of its motion for partial summary judgment and also moved for a full summary judgment on appellants' complaint on the basis that a filed deposition of appellant Ray E. DePugh indicated that besides renovating a dump truck, he had expended no money in reliance upon the purported agreement between the parties.

On June 27, 1991, the common pleas court entered summary judgment in favor of appellee and dismissed appellants' complaint. The court below determined that the parties' proposed agreement involved the sale of an interest in appellants' real property and since it had not been reduced to writing, was unenforceable by virtue of the Statute of Frauds as set forth in R.C. 1335.05. The court further determined that appellants' claims of relief based upon promissory estoppel and quantum meruit failed to raise a genuine issue of material fact sufficient to preclude summary judgment.[1]

Appellants' sole assignment of error asserts that the common pleas court erred in granting appellee's motion for summary judgment, since the parties' contract did not fall within the Statute of Frauds. Summary judgment is appropriate when the following have been established: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in their favor. *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881, 883. The burden of showing that no genuine issue exists as to any material fact falls upon the moving party in requesting a summary judgment. *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801. In reviewing the grant or denial of such a motion, we afford the trial court's decision no deference as we independently must determine if the decision was legally correct.

Appellants contend that the trial court erred in entering summary judgment in appellee's favor because: (1) the parties' agreement was for the grant of a license and therefore did not have to be in writing and signed by appellee; (2) even if the parties' agreement were found to be partly within the Statute of Frauds and partly outside the Statute of Frauds, the portion of the agreement

---

**1.** Appellants do not contend on appeal that the lower court erred in granting summary judgment in favor of appellee on their promissory estoppel and quantum meruit claims. Instead, their argument on appeal is limited to their breach of contract claim.

outside the Statute of Frauds should have been enforced; and (3) the parties' agreement was not within the Statute of Frauds because appellee signed a subsequent memorandum recognizing the agreement's existence.

R.C. 1335.05 provides, in pertinent part, as follows:

"No action shall be brought whereby to charge * * * a person * * * upon a contract or sale of lands, tenements, or hereditaments, or interest in or concerning them * * * unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized."

■ According to appellant Ray E. DePugh's affidavit, the written but unsigned "BORROW AGREEMENT" represented the parties' oral contract. Appellants initially contend that the parties' contract, as exemplified by the "BORROW AGREEMENT," merely constituted a granting of a license to appellee rather that the sale of an interest in appellants' land, and, consequently, R.C. 1335.05 did not preclude appellants' breach of contract action. The Statute of Frauds was designed to prevent the enforcement of unfounded fraudulent claims by requiring written evidence and to further prevent fraud by requiring certain enumerated contracts to be evidenced in writing. *Jones v. Bonzo* (Oct. 30, 1991), Lawrence App. No. 1977, unreported, at 7, 1991 WL 224159; 3 Williston on Contracts (3 Ed.1960) 340–341, Section 448.

■ An "interest in land" within the meaning of the Statute of Frauds is any right, privilege, power or immunity, or combination thereof, which is an interest in land under the law of property and is not "goods" within the Uniform Commercial Code. Restatement of the Law 2d, Contracts (1979) 318, Section 127. Pursuant to R.C. 1302.03(A), a contract for the sale of minerals or the like, including oil and gas, or a structure or its materials to be removed from realty is a contract for the sale of goods within Ohio's codification of the Uniform Commercial Code if they are to be severed by the seller. Conversely, if the buyer is to sever, such transactions are considered contracts affecting land and all problems of the Statute of Frauds apply to them. See, generally, 1 Anderson, Uniform Commercial Code (3 Ed.1981) 616–617. The sale of several feet of clay soil to be removed by the buyer and which could only be reached by removing several feet of topsoil is not the sale of goods within the Uniform Commercial Code and, thus, the contract must satisfy the Statute of Frauds. *Tousley–Bixler Constr. Co. v. Colgate Ent., Inc.* (Ind.App.1982), 429 N.E.2d 979; *DeLuca v. Blakeslee & Sons, Inc.* (1978), 174 Conn. 535, 391 A.2d 170 (where contract provided that buyer of fill would remove it from the seller's land, the agreement would have to conform to the Statute of Frauds affecting the transfer of an interest in land in order to be enforceable); see,

also, *Bell v. Hill Bros. Constr. Co.* (Miss.1982), 419 So.2d 575 (oral contract for sale of borrow material from seller's land was governed by the Statute of Frauds affecting transfer of an interest in land).

In the case at bar, the oral contract involved the sale of clay to appellee in return for money and certain services. The clay was to be severed from appellants' property by appellee, and this removal necessitated the initial removal and stockpiling of topsoil. Pursuant to R.C. 1302.03(A) and by analogy to *Tousley–Bixler, supra,* the alleged agreement did not constitute the sale of "goods" within Ohio's codification of the Uniform Commercial Code. Accordingly, we must now determine whether the agreement constituted the sale or transfer of an interest in land under common precepts of property law. Restatement of Contracts 2d, *supra,* at Section 127. In this regard, appellants claim that the agreement conferred a mere license upon appellee.

The term "license" denotes an interest in land in the possession of another which entitles the owner of the interest to a use of the land, arises from the consent of the one whose interest in the land used is affected thereby, is not incident to an estate in the land, and is not an easement. 5 Restatement of the Law, Property (1944) 3115, Section 512. A license is a personal, *revocable,* and nonassignable privilege, conferred either by writing or parol, to do one or more acts upon land without possessing any interests in the land. *Yeager v. Tuning* (1908), 79 Ohio St. 121, 124, 86 N.E. 657, 657; *Horvitz v. Horvitz* (Jan. 24, 1985), Cuyahoga App. No. 48315, unreported, 1985 WL 7459; *Cyrus Investors, Inc. v. Hoffman* (Nov. 26, 1991), Franklin App. Nos. 91AP–373 and 91AP–457, unreported, 1991 WL 249516; 2 McDermott, Ohio Real Property Law & Practice (3 Ed.1956) 438–439, Section 10–17A. At common law, an oral license to be exercised upon the land of another creates an interest in the land that is not necessarily an "interest in land" for purposes of the Statute of Frauds. *Horvitz, supra;* cf. *Moon v. Central Bldrs., Inc.* (1984), 65 N.C.App. 793, 310 S.E.2d 390.

Appellants assert that a plain reading of the parties' unsigned "BORROW AGREEMENT" indicates that the parties intended to confer a license, *i.e.,* the right to enter onto appellants' property for the purpose of removing clay, rather than transfer any interest in appellants' land which would require compliance with R.C. 1335.05. The construction of written contracts and instruments of conveyance is generally a matter of law. *Latina v. Woodpath Dev. Co.* (1991), 57 Ohio St.3d 212, 214, 567 N.E.2d 262, 264; *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph one of the syllabus. The general rule is that contracts should be construed so as to give effect to the intention of the parties. *Sanitary*

*Commercial Serv., Inc. v. Shank* (1991), 57 Ohio St.3d 178, 182, 566 N.E.2d 1215, 1219. In that appellant Ray E. DePugh's affidavit indicated that the written "BORROW AGREEMENT" represented the terms of the parties' oral contract, we now apply the foregoing rules of construction by analogy to the "BORROW AGREEMENT."

 Although appellants are correct that appellee was explicitly granted a "license and right to enter upon and use the Property" in the "BORROW AGREEMENT," these rights were expressly listed under the heading *"Sale of Borrow."* (Emphasis added.) Moreover, the introductory paragraphs to the agreement indicated that appellee's sole intention in acquiring its "license" was to acquire clay to cap a landfill. Earth, sand, and gravel are part of the soil and are "land" within the meaning of the section of the Statute of Frauds governing contracts for the sale of interests in lands, and an oral contract for the sale of such material is within the statute. See, generally, 72 American Jurisprudence 2d (1974) 610, Statute of Frauds, Section 51; 51 Ohio Jurisprudence 3d (1984) 203–204, Statute of Frauds, Section 39; *Welever v. Detwiler Co.* (App.1898), 15 Ohio C.C. 680; *Davis v. Carnegie Steel Co.* (C.A. 6, 1917), 244 F. 931. Soil, sand, stone, and all other kinds of minerals are included within the interest of land provision of the Statute of Frauds. 2 Corbin on Contracts (1950) 415, Section 408. Based upon the foregoing authorities as well as our review of the "BORROW AGREEMENT," we are persuaded that the alleged oral contract was manifestly for the sale of clay to be removed by the buyer and, as such, constituted the sale of an interest in appellants' property that required full compliance with R.C. 1335.05, the Statute of Frauds. But, cf., *Bell, supra.*

 Appellants next contend that summary judgment was improper on their breach of contract claim because the parties' oral contract, as reflected by the written but unsigned "BORROW AGREEMENT," was divisible in a way that required enforcement of appellee's promise to construct a lake on appellants' property. If a parol contract is entire and indivisible and a part of it is within the Statute of Frauds, the whole contract is unenforceable; however, if the contract is divisible, that part of it which is not within the statute may be enforced. *Frantz v. Maher* (1957), 106 Ohio App. 465, 7 O.O.2d 209, 155 N.E.2d 471; see, generally, 2 Corbin on Contracts, *supra,* 124–128, Section 313. Divisibility is a general technique by which a court can mitigate the harshness of a rule that bars a party from enforcing an agreement by apportioning the performances into corresponding pairs of part performances and then enforcing the agreement as to only one part; additionally, the issue of whether an agreement is divisible is a question of law.

*Spensley Feeds, Inc. v. Livingston Feed & Lumber, Inc.* (App.1985), 128 Wis.2d 279, 381 N.W.2d 601, 604.

 Although there is no exact definition to determine when a contract is "divisible" or "entire," a contract is generally not severable or divisible when its purpose, terms and nature contemplate that its parts and consideration shall be interdependent and common to each other. *Moulds v. James F. Proctor, D.D.S., P.A.* (Aug. 16, 1991), Tenn.App., unreported, 1991 WL 137577. If the consideration to be paid is single and entire, the contract must be held to be entire, although the subject thereof may consist of several distinct and wholly independent items. *Dumas v. Auto Club Ins. Assn.* (1991), 437 Mich. 521, 537–538, 473 N.W.2d 652, 659. In the case at bar, appellee's only consideration for its money and promised services was the clay it was to use to cap a landfill. The parties' alleged "BORROW AGREEMENT" indicated that the removal of clay and purchase thereof were interdependent to its promised construction of a lake, etc. for appellants. This is further emphasized by the provision in the "BORROW AGREEMENT" noting that the *entire* contract was contingent upon the Ohio EPA's acceptance of the clay to be used by appellee to close the landfill. Therefore, as a matter of law, the parties' alleged oral contract was indivisible and completely unenforceable pursuant to R.C. 1335.05.

 Appellants' final argument is that the parties' oral agreement was not within the Statute of Frauds, since a representative of appellee signed an October 19, 1989 letter which recognized the existence of an oral agreement. A subsequent memorandum signed by the party to be charged with the contract satisfies the Statute of Frauds, R.C. 1335.05, if it: (1) identifies the subject matter of the contract; (2) establishes that a contract has been made; and (3) states the essential terms of the contract with reasonable certainty. *N. Coast Cookies, Inc. v. Sweet Temptations, Inc.* (1984), 16 Ohio App.3d 342, 16 OBR 391, 476 N.E.2d 388. The October 19, 1989 letter from appellee's purchasing manager, referred to a *"proposed* Borrow Agreement." (Emphasis added). The letter can be construed to establish that an agreement had been reached since paragraph three states that "the rights and obligations in the proposed Borrow Agreement are hereby *terminated* and shall be of *no further* force and effect." (Emphasis added). However, the letter clearly does not state all of the agreement's essential terms with reasonable certainty. Quite simply, the letter's purpose was to effect a settlement of the parties' dispute rather than to memorialize any alleged oral contract. See, *e.g.,* Evid.R. 408, which provides that evidence of conduct or statements made in compromise negotiations is inadmissible. Therefore, the foregoing letter did not satisfy R.C. 1335.05.

Accordingly, for all of the foregoing reasons, appellants failed to establish a genuine issue as to any material fact and R.C. 1335.05 barred appellants' breach of contract claim as a matter of law. Consequently, appellants' assignment of error is overruled and the judgment entered by the court below is affirmed.

*Judgment affirmed.*

GREY and PETER B. ABELE, JJ., concur.