JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiffs-appellants, Mark S. Weisman, his wife, Heidi B. Weisman, and their two minor children, appeal from a judgment of the Cuyahoga County Court of Common Pleas, granting summary judgment to defendants-appellees, Jay L. Blaushild, president, CEO, and majority shareholder of Famous Enterprises, Inc., Famous Manufacturing Co., and Famous Distribution, Inc. (collectively "Famous"). For the following reasons, we affirm.
 {¶ 2} In September 2005, plaintiffs filed suit against defendants, alleging that defendants fraudulently or negligently misrepresented to plaintiffs the amount of company stock plaintiffs owned during contract negotiations that occurred on April 12, 2002. The negotiations involved Mark Weisman's continued employment at Famous.
 {¶ 3} According to the complaint, Mark Weisman entered into an employment agreement with Famous in February 1991, becoming vice president and general counsel for Famous. Sometime in 2001, a dispute arose between the parties as to Mark Weisman's continued employment status, as well as the amount of Famous stock plaintiffs owned.
 {¶ 4} Specifically, plaintiffs claimed that at the April 12, 2002 negotiation meeting regarding Mark Weisman's employment contract, Jay Blaushild and outside counsel for Famous represented to Mark Weisman that plaintiffs owned 2.19 percent of Famous stock as of December 2000, 2.56 percent as of December 2001, and that *Page 3 
an additional transfer to plaintiffs was being made, so that by April 30, 2002, plaintiffs would own 2.94 percent of Famous stock. Plaintiffs alleged the representations were false, and that no additional transfers were made after December 2000. As such, plaintiffs only owned 2.19 percent of Famous stock.
 {¶ 5} Plaintiffs further claimed that defendants made such misrepresentations to entice plaintiffs to enter into a Comprehensive Settlement Agreement. Plaintiffs maintained that they relied on the alleged misrepresentations to their detriment when they entered into the Comprehensive Settlement Agreement on May 14, 2003.
 {¶ 6} Defendants answered the complaint, denying any misrepresentations were made, but admitting that plaintiffs only owned 2.19 percent of Famous stock and that no further stocks had been transferred to plaintiffs.
 {¶ 7} Defendants also filed counterclaims against plaintiffs seeking a declaration from the trial court that plaintiffs' claims were barred by the Comprehensive Settlement Agreement. The Comprehensive Settlement Agreement, attached to defendants' answer and counterclaims, contained a "Release and Waiver" provision. In it, Mark Weisman agreed to release defendants "from any and all claims, demands, and causes of action of any nature or description whatsoever which Weisman might have against any such parties[.]" Defendants alleged that plaintiffs breached the release in such agreement and demanded costs and attorneys' fees. *Page 4 
 {¶ 8} On May 3, 2006, plaintiffs filed a motion to strike defendants' counterclaims. Defendants opposed the motion.
 {¶ 9} In June 2006, defendants Blaushild and Famous moved for summary judgment. In their motion, defendants argued that they were entitled to summary judgment because plaintiffs could not demonstrate genuine issues of material fact as to any of the elements of the alleged fraud. Alternatively, defendants argued that even if plaintiffs could prove fraud, defendants would still be entitled to summary judgment because plaintiffs did not tender back money and other benefits they received when plaintiff Mark Weisman entered into the Comprehensive Settlement Agreement, releasing defendants from "any and all claims" against them.
 {¶ 10} Defendants Blaushild and Famous also moved for partial summary judgment on their counterclaims. Defendants maintained that Mark Weisman breached the Comprehensive Settlement Agreement by violating the release provision, and that they were entitled to judgment as a matter of law on that issue, and if granted, only costs and attorneys' fees would remain to be adjudicated.
 {¶ 11} In their response, plaintiffs argued that the evidence raised genuine issues of material fact as to whether fraud occurred, either intentionally or negligently. They further contended that the tender-back rule did not apply to their intentional fraud claim since they sought monetary damages, and not equitable rescission, nor did it apply to negligent misrepresentation. *Page 5 
 {¶ 12} On September 7, 2006, the trial court denied plaintiffs' motion to strike defendants' counterclaims. And on September 14, 2006, the trial court, in an interlocutory order pursuant to Civ.R. 54(B), granted summary judgment to defendants in part, on plaintiffs' claims, leaving only defendants' counterclaims and damages to be adjudicated.
 {¶ 13} In its September 14, 2006 journal entry, the trial court granted summary judgment to defendants because it found that "the fraud alleged in this case is fraud in the inducement," and therefore according to Haller v. Borrer Corp. (1990), 50 Ohio St.3d 10, plaintiffs "must first tender back the consideration they received for making the release." Because plaintiffs had not done so, the trial court concluded that defendants were entitled to judgment as a matter of law on plaintiffs' claims.
 {¶ 14} It is from this judgment that plaintiffs appeal, raising the following two assignments of error:
 {¶ 15} "[1.] The Trial Court erred in granting summary judgment in favor of Defendants-Appellees, based on the misapplication of the caseof Haller v. Borrer Corp. [1990], 50 Ohio St.3d 10, where genuine issues of materials [sic] fact exist, and Defendants-Appellees are not entitled to judgment as a matter of law.
 {¶ 16} "[2.] The Trial Court erred in denying Plaintiffs-Appellants' Motion to Strike Defendants-Appellees' Counterclaim, where such Counterclaim is insufficient as a matter of law." *Page 6 
 {¶ 17} In their first assignment of error, appellants present two issues for our review. Appellants first argue that the trial court erred when it granted summary judgment "on a single ground, based on one case:Haller, supra," concluding that the tender-back rule applied to bar appellants' claims. Appellants then contend that the trial court erred when it granted summary judgment on their negligent misrepresentation claim, maintaining that the tender-back rule does not apply to negligent misrepresentation.
 Summary Judgment Standard of Review {¶ 18} A reviewing court reviews an award of summary judgment de novo.Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. Therefore, this court applies the same standard as the trial court, viewing the facts in the case in the light most favorable to the nonmoving party and resolving any doubt in favor of the nonmoving party. Viock v.Stowe-Woodward Co. (1983), 13 Ohio App.3d 7, 12.
 {¶ 19} Pursuant to Civ.R. 56(C), summary judgment is proper if:
 {¶ 20} "(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." To prevail on a motion for summary judgment, the party moving for summary judgment must be able to point to evidentiary materials that show that there is no genuine *Page 7 
issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Dresher v. Burt (1996),75 Ohio St.3d 280, 293. Once a moving party satisfies its burden of supporting its motion for summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings. Rather, the nonmoving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated for trial. State ex rel.Zimmerman v. Tompkins (1996), 75 Ohio St.3d 447, 449.
 Releases and the Tender-Back Rule {¶ 21} Generally speaking, validly executed releases are enforceable. "A release of a cause of action is ordinarily an absolute bar to a later action on any claim encompassed within the release." Haller, supra, at 210. In the present case, appellant Mark Weisman unambiguously — and broadly — released appellees from:
 {¶ 22} "any and all claims, demands, and causes of action of any nature or description whatsoever which Weisman might have against any such parties * * * occurring on or before the date of [the] Agreement[,] * * * including], among other things, claims based on the legal theories of wrongful or unjust termination, breach of contract (express or implied, and including, without limitation, a certain Employment Agreement dated February 1, 1991 * * *), promissory estoppel, negligent *Page 8 
or intentional (tortious) conduct, negligent or intentional infliction of emotional distress, defamation, breach of any implied convenant of good faith and fair dealing, and any and all forms of employment discrimination and including claims for attorneys' fees, expenses and costs related to any of the foregoing[.]"
 {¶ 23} In Task v. National City Bank (Feb. 10, 1994), 8th Dist. No. 65617, 1994 Ohio App. LEXIS 437, at 4, this court explained:
 {¶ 24} "A release ordinarily operates to extinguish a right in exchange for some consideration and effectively operates as an estoppel or a defense to an action by the releasor. As such, it is a contract between parties, enforceable at law subject to the rules governing the construction of contracts. Whether a release operates upon a certain liability depends entirely upon the intention of the parties, which is to be gathered from the language of the release and the state of facts then existing. If the parties to a release intend to leave some things out of a release, then `their intent to do so should be made manifest.' When the terms of a contract are unambiguous, courts will not, in effect, create a new contract by finding an intent not expressed in the language employed by the parties. Moreover, when the parties have negotiated the release with the assistance of legal counsel, and both sides have agreed to the language included in the release, there is an assumption that the parties are fully aware of the terms and scope of their agreement." (Internal citations omitted).
 {¶ 25} To avoid the release, the releasor must allege that the release was obtained by fraud and that he has tendered back the consideration received for the *Page 9 
release. Haller, supra, at 210, citing Manhatten Life Ins. Co. v.Burke (1903), 69 Ohio St. 294. In Haller, the Ohio Supreme Court went to great lengths to distinguish "fraud in the factum" (which would make the release "void" and the tender-back rule would not apply) and "fraud in the inducement" (which would make the release "voidable" and the tender-back rule would apply). In the case sub judice, however, there is no dispute that the alleged fraud, if true, would be fraud in the inducement. The question, as appellants phrase it, is whether the tender-back rule applies when a "defrauded party elects to sue for money damages at law, rather than for the equitable relief of rescission."
 {¶ 26} The policy behind the tender-back rule when the parties agree to a release provision is that the law favors the prevention of litigation by the compromise and settlement of controversies.Haller at 211, citing White v. Brocaw (1863), 14 Ohio St. 339, 346. Therefore, "a releasor ought not be allowed to retain the benefit of his act of compromise and at the same time attack its validity when he understood the nature and consequence of his act, regardless of the basic nature of the inducement employed." Id., citing Shallenberger v.Motorists Mut. Ins. Co. (1958), 167 Ohio St. 494. "In that event, the consideration should first be returned so that the parties may be placed in the positions they enjoyed prior to the practice of the fraud alleged." Id.
 {¶ 27} Appellants maintain that Haller is distinguishable because "the holding in Haller is limited to cases in which the entire underlying contract is in the nature of *Page 10 
the release." Appellants claim that in this case, the release was not given in exchange for the settlement agreement; but rather "the release is but one of twenty (20) provisions." We disagree. Although the amount of money and benefits the Hallers received in their settlement was much less than what the Weismans received, the facts are strikingly similar.
 {¶ 28} In Haller, after relations between Haller and his employer broke down, they entered into a settlement agreement where Haller agreed to release his claims in exchange for $50,000, plus $3,436.86 for medical benefits and arbitration fees. Haller later alleged there was fraud in the negotiation of the settlement itself. The court held that because Haller alleged fraud in the inducement, and therefore the settlement agreement and release were only voidable, that "in order to attack that release for fraud the Hallers [were] first required to tender back the consideration they received in the amount of $50,000 and other benefits." Id. at 15.
 {¶ 29} Appellants do not dispute that appellant Mark Weisman did not knowingly and voluntarily agree to release defendants from "any and all claims." They argue, however, that the release "cannot be used by the [appellees] as a sword to defeat this claim," because the tender-back rule in Haller does not apply. They contend it does not apply because they did not seek rescission of the contract, but instead chose to bring their claim for money damages. Again, we disagree.
 {¶ 30} Appellants' proposition that "[t]he Haller rule only applies to a narrow sub-set of fraud in the inducement cases: Those in which the aggrieved party elects *Page 11 
to seek equitable relief of rescission of the contract," is simply wrong. (Emphasis sic.) General contractual law governing election of remedies has nothing to do with the specific Ohio rule governing releases. Jacobs v. Invisible Fence Co., Inc. (C.A. 6, 1999), No. 98-4549, 1999 U.S. App. LEXIS 32201, at 7, citing Sokol v. Swan SuperCleaners, Inc. (1985), 26 Ohio App.3d 128.
 {¶ 31} The law in Ohio governing releases is well settled. InJacobs, supra, the Sixth Circuit Court of Appeals thoroughly reviewedHaller, its reasoning, and two prior Ohio Supreme Court cases, which theHaller court also relied on and which set forth Ohio law regarding releases: Picklesimer v. Baltimore Ohio R. Co. (1949), 151 Ohio St. 1, and Shallenberger, supra.
 {¶ 32} The appellants in Jacobs argued, as they do in the present case, that they should have been able to "either rescind the agreement or pursue an independent action for fraud." Because they had signed a release, the Sixth Circuit explained why they could not do so:
 {¶ 33} "In Picklesimer, the Ohio Supreme Court first addressed whether an action for fraud in the inducement of a release may lie absent rescission of the release and tender of the consideration paid. ThePicklesimer court distinguished between a release that is void and one that is voidable. An agreement is void when the party has been fraudulently prevented from knowing that he or she has signed a release or the contents of the release. Id. at 5. In contrast, an agreement is merely voidable when the party alleges fraud or misrepresentation as to the facts inducing *Page 12 
the party to settle. Id. Where the release is merely voidable, thePicklesimer court held that a claim of fraud based on misrepresentations inducing a settlement and release may not be maintained without first voiding the release and tendering back any consideration paid. Id. at 7. The Picklesimer court considered and rejected plaintiff's claim that he sought damages independent from the personal injury damages settled in the original action. Id.
 {¶ 34} "Subsequently, in Shallenberger, the court reaffirmed and extended Picklesimer. In Shallenberger, the plaintiff was injured in an automobile accident allegedly caused by the negligence of another. In the same accident, her automobile was damaged. Plaintiff first sought to be paid by the defendant for the damages to her car. The agent of the defendant, the insurer, allegedly falsely and fraudulently represented to her that it was necessary for her to sign a release before receiving compensation for damage to her car, and falsely represented that signing the release would have no effect on her rights to be compensated for her personal injuries. When plaintiff later sought recovery for personal injuries, defendant claimed that the paper plaintiff signed constituted a complete release and operated as a defense to plaintiff's personal injury claim.
 {¶ 35} "In response, [the] plaintiff [in Shallenberger] brought an action for fraud not against the original defendant, but against his agent, the insurance carrier. The Shallenberger court held that although the defendant in the fraud action was not the defendant released by plaintiff, in order to maintain a fraud action against the agent, *Page 13 
plaintiff was first required to set aside the release and tender back the consideration paid. Id. at 501-02. The court reasoned that damages induced by the fraud were indistinguishable from damages for personal injuries. The court declined to permit the jury to engage in speculation regarding the possibility of separable and independent damages caused by the fraud alone. Id. at 503.
 {¶ 36} "Finally, in Haller, the Ohio Supreme Court again considered the question. In Haller, the plaintiff contended that he was discharged in violation of a contract of employment and was denied contractually owed compensation. Haller invoked the arbitration procedures contained in his employment agreement. Just before the arbitration hearing, Haller and his wife settled their claims and released the corporation. Subsequently, Haller sought additional recovery from both the chief executive officer and the company. Haller alleged that he had been induced to settle the action before the arbitration hearing when the chief executive officer of the company made false threats affecting the value of his claim. In Haller, as in Picklesimer andShallenberger, the court again concluded that when misrepresentations by a party induces another to settle a claim on unfavorable terms, the agreement is not void, but merely voidable, and can be contested only after rescission and tender of consideration. Haller at 15."Jacobs at 7-10.
 {¶ 37} Thus, the law in Ohio governing releases is clear. Because of the release, appellants did not have a choice of remedies. Since appellant Mark Weisman agreed to the release provision in exchange for consideration in the *Page 14 
Comprehensive Settlement Agreement, they only had one option. They first had to rescind and tender back the consideration — before they could bring their suit.[1]
 {¶ 38} The appellants in Jacobs further argued, as appellants also do in the case at bar, that if the tender-back rule applied, then the court "should carve out an exception to the Ohio rule for those circumstances in which tendering back the consideration paid is either impossible or impracticable." Jacobs at 10-11. Appellants here maintain that "it would be impossible to calculate the portion of the consideration given in exchange for the release only." For the following reasons, this court does not agree with this proposition.
 {¶ 39} Appellants cite Lewis v. Mathes, 161 Ohio App.3d 1,2005-Ohio-1975, in support of this argument, arguing that because the general release provision at issue did not specify what amount of consideration was given for the release, they should *Page 15 
not have to tender it back. Appellants claim that in Lewis, the plaintiff was only required to tender back a specified portion of the consideration; i.e., $68,000, that was given in exchange for the release. A careful review of Lewis reveals the opposite.
 {¶ 40} In Lewis, the plaintiff argued that he should not have to tender back the $68,000 to avoid the release and pursue his claims — because "the monetary consideration he received was solely for the purchase of his stock as the value determined by the corporate valuation," and that it was not received "in exchange for the mutual release." Id. at _7. The defendants argued that "the $68,000 payment was part of a total package of considerations given in exchange for both the stock and the release." Id. at _28.
 {¶ 41} The court in Lewis agreed with the defendants. It reasoned that a `"contract is generally not severable if its purpose, terms, and nature contemplate that its parts and consideration shall be interdependent and common to each other. * * * If the consideration to be paid is single and entire, the contract must be held to be entire, although the subject thereof may consist of several distinct and wholly independent items.'" Id. at _31, quoting DePugh v. Mead Corp. (1992),79 Ohio App.3d 503, 513. The court stated "[t]he parties did not apportion part of the consideration for Lewis's stock and part for his release." Id. at _32. Thus, the court held, "the agreement was entire[,] [therefore Lewis was required to return the *Page 16 
$68,000 to avoid the release and pursue his causes of action against [defendants]." Id.
 {¶ 42} As in Lewis, the parties in the case sub judice did not apportion part of the consideration specifically for the release. The twenty, all-encompassing provisions of the Comprehensive Settlement Agreement are "interdependent and common to each other." See id. at _31. The contract is entire and cannot be severed. Therefore, appellants had to return the consideration they received under the agreement — in order to pursue their claims.
 {¶ 43} In sum, because of the release, appellants did not have a choice of remedies. Since they signed the release in exchange for consideration encompassing a Comprehensive Settlement Agreement, theyonly had one option. They first had to rescind and tender back theconsideration — before they could bring their suit. Since there is no dispute that they have not done so, appellees were entitled to summary judgment on plaintiffs' fraud claim.
 Negligent Misrepresentation {¶ 44} Appellants also argue in their first assignment of error that the tender-back rule does not apply to their claim of negligent misrepresentation. They contend that "[t]he tender back rule inHaller is expressly limited to cases in which the plaintiffs allege" intentional fraud. *Page 17 
 {¶ 45} Haller holds that to set aside a release, the releasor must prove that the release was procured by fraud or was the product ofmutual mistake. Id. at 13. Since negligent misrepresentation is neither one of those claims, the release itself bars the claim. Thus, appellees were entitled to summary judgment on appellants' negligent misrepresentation claim.
 {¶ 46} Accordingly, appellants' first assignment of error is not well taken.
 Motion to Strike Counterclaim {¶ 47} In their second assignment of error, appellants argue that the trial court erred when it denied appellants' motion to strike appellees' counterclaim. We conclude that we do not have jurisdiction to address this issue, although not for the reasons set forth by appellees.[2]
 {¶ 48} The trial court denied appellants' motion to strike on September 7, 2006. It then granted summary judgment to appellees on appellants' claims on September 14, 2006. In the September 14, 2006 entry, the trial court stated, "This is a final appealable order and there is no just reason for delay. All other claims shall be stayed pending the appeal of this order." *Page 18 
 {¶ 49} Therefore, appellees' counterclaims remain pending, as well as their claim for costs and attorneys' fees. The order denying appellants' motion to strike is an interlocutory order and this court does not have jurisdiction at this time to consider the merits of it.
 {¶ 50} Accordingly, appellants' second assignment of error is dismissed.
 {¶ 51} The judgment of the Cuyahoga County Court of Common Pleas granting summary judgment to appellees is affirmed and the case is remanded for consideration of the pending counterclaims.
It is ordered that appellees recover from appellants costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MARY EILEEN KILBANE, P.J., and FRANK D. CELEBREZZE, JR., J., CONCUR
[1] The law on the question of available remedies for fraud in the execution of a release is not the same in all states. In DiSabatino v.United States Fidelity Guaranty Co. (1986), 645 F.Supp 350, the United States District Court for Delaware (addressing Delaware law), disagreed with the reasoning of the Ohio Supreme Court in Shallenberger, supra.DiSabatino at 354 ("the fallacy of this position is evident"). TheDiSabatino court concluded that the plaintiffs could sue the defendant for fraud without setting aside the release based on a three-prong rationale. "First, a settlement agreement is a contract for which consideration has passed to both sides; a plaintiff who is fraudulently induced to relinquish a claim has certainly lost something, and simply allowing for rescission of the agreement does not take into account the problems associated with the passage of time, e.g., costs, procedural difficulties. Second, `simply as a matter of policy, this cause of action should exist'; otherwise, an unscrupulous party would have nothing to lose by defrauding a plaintiff to settle a tort claim. Third, a defrauded party may be entitled to punitive damages that would not be available if the original action was reinstated through rescission."E.I. Dupont De Nemours and Co. v. Florida Evergreen Foliage (1999), 744 A.2d 457, 464 (a Delaware Supreme Court case explicitly endorsing the holding of DiSabatino).
[2] Appellees argue that this court does not have jurisdiction because appellants failed to designate the September 7, 2006 motion to strike order in their notice of appeal as required by App.R. 3(D). We agree that appellants did not do so; appellants only designated the September 14, 2006 order granting summary judgment to appellees. Nevertheless, under App.R. 3(A), this court would still have jurisdiction. See In reA.D., 8th Dist. No. 87510, 2006-Ohio-6036, at _18-20 andTransamerica Ins. Co. v. Nolan (1995), 72 Ohio St.3d 320, syllabus. *Page 1