FRANCIS M. DeLUCA, TRUSTEE *v.* C. W. BLAKESLEE AND SONS, INC.

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and SPEZIALE, Js.

Argued November 9, 1977—decision released April 10, 1978

*Tobias Weiss,* for the appellant (plaintiff).

*William J. Egan,* for the appellee (defendant).

HOUSE, C. J.  In this action the plaintiff sought an injunction and $2,400,000 damages from the defendant.  It was returned to the Superior Court in Fairfield County and referred to a state trial referee, who, sitting as the court, rendered judgment for the defendant.  From that judgment the plaintiff appealed to this court.

The plaintiff was the owner of approximately 356 acres of undeveloped land partly in Canaan and partly in Cornwall, hereinafter referred to as the premises. The defendant was a general contractor who was interested in obtaining contracts from the state for the construction of three sections of highway known as route 7. Because each of these three separate projects would require a large quantity of fill, before the defendant entered bids on the projects it entered into negotiations concerning the possibility of using the plaintiff's premises as a source for obtaining the necessary fill. The plaintiff's suit was predicated upon the claim that these negotiations culminated in a contract under the terms of which the defendant was to purchase the fill from the plaintiff and that the defendant breached this contract.

The complaint was in three counts. In the first count the plaintiff alleged that the parties entered into a contract under the terms of which the plaintiff would make the premises available to the defendant which would extract the required fill and transport it to the work site by train and truck. The second count repeated the general allegations of the first count concerning the alleged contract and, without mentioning the Statute of Frauds, did allege that as a result of the negotiations the plaintiff accepted the offer of the defendant and executed the performance requested by the defendant thereby accepting the defendant's offer and creating a contract between them on the terms set forth in the first count. The third count repeated the substance of the first two counts and alleged that during the negotiations the defendant made false representations with the intent to deceive and defraud the plaintiff and the plaintiff was damaged by his reli-

ance upon those misrepresentations. In its answer, the defendant denied the material allegations of the plaintiff's complaint and by way of special defense alleged that the negotiations between the parties working towards a contract never culminated in a contract and were broken off when the parties could not resolve the differences reflected in draft contracts submitted by each to the other.

The court found for the defendant on the first count on the ground that enforcement of the alleged contract was barred by the Statute of Frauds, on the second count on the ground that there was not a part performance by the plaintiff, and on the third count, in fraud, on the ground that the defendant made no intentional or reckless misrepresentation to the plaintiff.

As is to be expected in an appeal in such a case as this where the evidence covered the whole area of the relationship between the parties, their conferences, negotiations, correspondence and actions, the court found it necessary to file a lengthy finding of fact, and, in turn, the plaintiff extensively attacked that finding in his assignments of error, seeking numerous additions and corrections. To note and discuss each finding and the attack on it would unduly prolong this opinion. We have examined each one seriatim and, testing the findings and the attacks in accordance with the well established applicable law and rules, we find that the finding is not subject to any material correction, nor is it necessary to attempt to summarize the finding in any detail. It suffices to note the decisive conclusions of the court and the findings relevant to them.

The court concluded that a contract such as that alleged by the plaintiff, to be enforceable, must con-

form to the requirements of the Statute of Frauds[1] affecting the transfer of interests in land because it provided that the defendant buyer would remove the material from the plaintiff's land. It also concluded that the contents of two letters sent by the defendant upon which the plaintiff relied to satisfy the requirements of the statute were not sufficient because (1) they did not adequately describe the subject of the sale, (2) they did not contain the name of the seller, and (3) there was no reference therein to some other writing or thing certain to provide these missing essentials. The court rejected the plaintiff's claims (1) that the defendant was estopped from raising the defense of the Statute of Frauds, (2) that the defendant intentionally or recklessly made misrepresentations, and (3) that the plaintiff changed his position in reliance on anything that the defendant said or did. The court concluded that the plaintiff had done nothing sufficient to constitute part performance, had never delivered possession of the premises to the defendant, and had failed to sustain his burden of proof on each of the three counts of his complaint.

In testing the validity of the court's conclusions, we follow well settled principles. They are tested by the subordinate facts found by the trial court and, if the conclusions are logically supported by the facts, they must stand unless they violate law, logic or reason. *Lovett* v. *Atlas Truck Leasing,* 171 Conn. 577, 581, 370 A.2d 1061; *Nicoli* v. *Frouge*

[1] The relevant portion of § 52-550 of the General Statutes entitled "Statute of Frauds; Written Agreement or Memorandum" provides: "No civil action shall be maintained . . . upon any agreement for the sale of real estate or any interest in or concerning it . . . unless such agreement, or some memorandum thereof, is made in writing and signed by the party to be charged therewith or his agent . . . ."

*Corporation,* 171 Conn. 245, 248, 368 A.2d 74; *White Oak Corporation* v. *State,* 170 Conn. 434, 438, 365 A.2d 1162.

The first claim briefed by the plaintiff is that the court erroneously concluded that the alleged contract to be enforceable must conform to the requirements of the Statute of Frauds (General Statutes § 52-550) and that it did not meet those requirements. It appears that prior to the adoption of the Uniform Commercial Code (1959 Public Acts, No. 133, effective October 1, 1961) there was some confusion as to whether the Statute of Frauds applied to contracts concerning such a profit a prendre as was the subject of the negotiation in this case. See *Jo-Mark Sand & Gravel Co.* v. *Pantanella,* 139 Conn. 598, 601, 96 A.2d 217; *Miller* v. *State,* 121 Conn. 43, 47, 183 A. 17; *New Haven* v. *Hotchkiss,* 77 Conn. 168, 170, 173, 58 A. 753. The confusion was cleared with the adoption of the Uniform Commercial Code, incorporated into the General Statutes in title 42a. Section 42a-2-107 (1)[2] as it was in effect at all times relevant to the present case made a significant distinction between instances where the subject of the profit a prendre was to be severed from the realty by the seller rather than by the buyer. The significance of this distinction was emphasized in the official comments concerning the code as promulgated by the American Law Institute and the National Conference of Commissioners on Uniform State Laws which commented

[2] " [1959 Public Acts, No. 133] Section 2-107. GOODS TO BE SEVERED FROM REALTY: RECORDING. (1) A contract for the sale of timber, minerals or the like or a structure or its materials to be removed from realty is a contract for the sale of goods within this Article if they are to be severed by the seller but until severance a purported present sale thereof which is not effective as a transfer of an interest in land is effective only as a contract to sell."

with respect to subsection (1) of U.C.C. § 2-107: "Notice that this subsection applies only if the . . . minerals . . . 'are to be severed by the seller.' If the buyer is to sever, such transactions are considered contracts affecting land and all problems of the Statute of Frauds . . . apply to them. Therefore, the Statute of Frauds section of this Article [U.C.C. § 2-201] does not apply to such contracts though they must conform to the Statute of Frauds affecting the transfer of interests in land." In the present case, the agreements claimed by the plaintiff provided that the buyer of the fill should remove it from the plaintiff's land. In those circumstances, the court properly concluded that to be enforceable it was necessary that the alleged agreement conform to the Statute of Frauds affecting the transfer of an interest in land. See Uniform Land Transactions Act, Official Text Approved by the National Conference of Commissioners on Uniform State Laws, § 2-104 (a) and comment 1 to § 2-104.

The plaintiff has also attacked the court's conclusion that the alleged agreement did not meet the requirements of the Statute of Frauds. The subordinate facts, however, amply support this conclusion. The "writing" upon which the plaintiff chiefly relies consisted of two letters which the defendant had sent to the plaintiff's uncle and father during the negotiations. As the court's conclusion recites, those letters, taken separately or together, do not adequately describe the subject of the sale, do not contain the name of the seller and contain no reference to any other writing or thing certain to provide those missing essentials.

As this court said in *Santoro* v. *Mack,* 108 Conn. 683, 687, 145 A. 273, and repeated in *East Haven*

v. *New Haven,* 159 Conn. 453, 461, 271 A.2d 110:
" 'The requirements of a memorandum of sale to
satisfy the statute of frauds in this State are too
well established to require extended consideration.
It must state the contract between the parties with
such certainty that the essentials of the contract
can be determined from the memorandum itself
without the aid of parol proof, either by direct
statement or by reference therein to some other
writing or thing certain; and these essentials must
at least consist of the subject of the sale, the terms
of it and the parties to it, so as to furnish evidence
of a complete agreement. *Miller* v. *Vordenbaum,*
105 Conn. 636, 638, 136 Atl. 382; *Shoag* v. *Sheftel,*
99 Conn. 541, 543, 121 Atl. 799; *Gendelman* v. *Mon-*
*gillo,* 96 Conn. 541, 543, 114 Atl. 914; *Shelinsky* v.
*Foster,* 87 Conn. 90, 96, 87 Atl. 35; 27 Corpus Juris,
p. 269, § 319, p. 277, § 334. "The memorandum of
the contract need not be the contract itself, but
must contain sufficient data whereby a contract
satisfying the terms of the prior oral agreement
of the parties might be put in extended and cus-
tomary form, without the aid of oral proof." *Handy*
v. *Barclay,* 98 Conn. 290, 295, 119 Atl. 227. A memo-
randum is insufficient where a decree based thereon
would not carry out the true agreement as made
by the parties or where the agreement stated in
the memorandum does not express the entire agree-
ment between the parties so these must be supple-
mented by parol evidence of the negotiations.
*Gendelman* v. *Mongillo,* 96 Conn. 541, 545, 114 Atl.
914.' See also *Marsico* v. *Kessler,* 149 Conn. 236,
237, 178 A.2d 154; *Montanaro* v. *Pandolfini,* 148
Conn. 153, 157, 168 A.2d 550; *Garre* v. *Geryk,* 145
Conn. 669, 672, 145 A.2d 829."

It is also well settled that the requirements of § 52-550 apply equally to actions for specific performance or for damages for breach of contract. *Kilday* v. *Schancupp*, 91 Conn. 29, 32, 98 A. 335.

We find no error in the conclusion of the court that the requirements of the Statute of Frauds were not met. It properly concluded that the letters which the defendant wrote to Theodore M. Mitchell, the plaintiff's uncle, and Patrick A. DeLuca, the plaintiff's father, upon which correspondence the plaintiff chiefly relied as satisfying the Statute of Frauds, were not sufficient in themselves and made no reference to any other writing or thing certain to provide the missing essentials. While the plaintiff submitted other documents and memoranda which it claimed supplied the missing essential information, the court properly ruled that they were not sufficient. The reasons for its ruling are summarized in its memorandum of decision which we may examine to ascertain the grounds upon which it acted. *Burns* v. *Gould,* 172 Conn. 210, 217, 374 A.2d 193; *Willametz* v. *Goldfeld,* 171 Conn. 622, 626, 370 A.2d 1089. The court noted that the letters upon which the plaintiff relied to meet the requirement of a written memorandum of the alleged agreement made no reference to the other documents "and there is nothing contained therein to describe and locate the land." It further noted: "The memoranda in the present case referred to Mitchell and Pasquale DeLuca as the owners of the real estate. Neither of these persons had title to the land. Francis DeLuca, Trustee, was the owner and vendor and his name is not disclosed in the memoranda. Mitchell was an agent with limited authority. Since the memoranda did not contain the name of the seller there was no compliance with the statute of

frauds. *Utley* v. *Nolan,* 134 Conn. 376, 377 [58 A.2d 9]; *O'Sullivan* v. *Overton,* 56 Conn. 102, 105 [14 A. 300]." In addition to the cases cited by the trial court, see also *East Haven* v. *New Haven,* 159 Conn. 453, 461, 271 A.2d 110; *Mitchell* v. *A & B Coal Co.,* 133 Conn. 573, 576, 53 A.2d 202; *Nichols* v. *Johnson,* 10 Conn. 192, 198; 4 Williston, Contracts (3d Ed.) §§ 569, 577; 2 Corbin, Contracts § 500; Restatement, 1 Contracts § 207. It is also significant that the court expressly found (1) that although the plaintiff was in fact the owner of the real estate involved, Mitchell told the defendant that he, Mitchell, was the owner and (2) that Mitchell himself had no interest in the property, although the defendant was under the impression that he did.

Further assignments of error briefed by the plaintiff are addressed to the conclusions of the court (a) that the defendant was not estopped to raise the Statute of Frauds as a defense despite the plaintiff's claim of law to the contrary which the court overruled, and (b) that the plaintiff did nothing which constituted part performance of the alleged contract so as to render the proscription of the Statute of Frauds inapplicable, overruling the contrary claim of the plaintiff.

When the Statute of Frauds is claimed, the doctrine of estoppel may be applied to prevent the use of that statute to accomplish a fraud. *First Connecticut Small Business Investment Co.* v. *Arba, Inc.,* 170 Conn. 168, 174, 365 A.2d 100; *Wolfe* v. *Wallingford Bank & Trust Co.,* 124 Conn. 507, 513, 1 A.2d 146. " 'There are two essential elements to an estoppel — the party must do or say something that is intended or calculated to induce another to

believe in the existence of certain facts and to act upon that belief, and the other party, influenced thereby, must actually change his position or do some act to his injury which he otherwise would not have done.' *Fawcett* v. *New Haven Organ Co.,* 47 Conn. 224, 227; *Jensen* v. *Nationwide Mutual Ins. Co.* [158 Conn. 251, 261, 259 A.2d 598]; *Spear-Newman, Inc.* v. *Modern Floors Corporation* [149 Conn. 88, 91, 175 A.2d 565]; *Tradesmens National Bank* v. *Minor,* 122 Conn. 419, 424, 190 A. 270." *Novella* v. *Hartford Accident & Indemnity Co.,* 163 Conn. 552, 563, 316 A.2d 394; see *First Connecticut Small Business Investment Co.* v. *Arba, Inc.,* supra, 175; 31 C.J.S., Estoppel, § 59; 28 Am. Jur. 2d, Estoppel and Waiver, § 35. "[T]he acts of part performance generally 'must be such as are done by the party seeking to enforce the contract, in pursuance of the contract, and with the design of carrying the same into execution, and must also be done with the assent, express or implied, or knowledge of the other party, and be such acts as alter the relations of the parties.' *Andrew* v. *Babcock,* 63 Conn. 109, 120, 26 A. 715. The acts also must be of such a character that they can be naturally and reasonably accounted for in no other way than by the existence of some contract in relation to the subject matter in dispute." *Rutt* v. *Roche,* 138 Conn. 605, 608, 87 A.2d 805; see also *Santoro* v. *Mack,* 108 Conn. 683, 691, 145 A. 273; 3 Williston, Contracts (3d Ed.) § 533.

The court's conclusion that the plaintiff did not establish his entitlement to the benefit of the doctrine of estoppel by any performance of the type of act necessary to constitute part performance is amply supported by the subordinate facts, and we find no error in this conclusion.

The plaintiff's final claim of fraud on the part of the defendant requires but brief comment. The claim of the plaintiff was, essentially, that the defendant, by its false representations, induced the plaintiff to believe that the parties had a binding contract for the sale of the fill, that these false representations were made recklessly or intentionally and were relied and acted upon by the plaintiff to his detriment and, accordingly, the defendant was liable to him in fraud. The court overruled those claims, finding that there was no reckless or intentional misrepresentation by the defendant and that the plaintiff did not change his position in reliance on anything that the defendant said or did.

"Fraud, of course, is not to be presumed and must be strictly proven by clear, precise and unequivocal evidence. *Creelman* v. *Rogowski,* 152 Conn. 382, 384, 207 A.2d 272." *Busker* v. *United Illuminating Co.,* 156 Conn. 456, 458, 242 A.2d 708; reaffirmed in *Dacey* v. *Connecticut Bar Assn.,* 170 Conn. 520, 534, 368 A.2d 125. The intent to defraud involves a state of mind and "must usually, as was the case here, be proven by circumstantial evidence." *Busker* v. *United Illuminating Co.,* supra, 459; *Paul Bailey's, Inc.* v. *Commissioner of Motor Vehicles,* 167 Conn. 493, 498, 356 A.2d 114. As we noted in *State* v. *Vars,* 154 Conn. 255, 263, 224 A.2d 744: " 'A question of intent is a question of fact, the determination of which is not reviewable unless the conclusion drawn by the trier is one which cannot reasonably be reached.' *International Brotherhood* v. *Commission on Civil Rights,* 140 Conn. 537, 543, 102 A.2d 366. Intention is a mental process, and of necessity, it must be proved by the statement or acts of the person whose act is being scrutinized. *State* v. *Mazzadra,* 141 Conn. 731, 735, 109 A.2d 873.

'A person's intention in any regard is to be inferred from his conduct'; *Kiernan* v. *Borst,* 144 Conn. 1, 6, 126 A.2d 569; and ordinarily can be proven only by circumstantial evidence. *State* v. *Sul,* 146 Conn. 78, 87, 147 A.2d 686."

Upon conflicting evidence, it is peculiarly within the province of the trier of fact to judge the credibility of the witnesses and to draw proper inferences. *Kukanskis* v. *Jasut,* 169 Conn. 29, 32, 362 A.2d 898. The court's findings of fact fully support its conclusions that the defendant made no intentional or reckless misrepresentation to the plaintiff and that the plaintiff did not change his position in reliance on anything that the defendant said or did and that the plaintiff failed to sustain his burden of proof.

From the entire record in this case, the conclusion is inescapable that there were extended negotiations looking toward the execution of a contract by the terms of which the defendant would purchase fill from a site which, as it turned out, was in fact owned by the plaintiff, that the final terms of that anticipated contract were never agreed upon, that the closest the negotiations came to fruition was the cross submission of proposed drafts of a contract and that attempts to resolve the differences reflected in these two drafts were unavailing.

There is no error.

In this opinion the other judges concurred.