[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO REOPEN JUDGMENT
On December 10, 1992, plaintiff T. O. Richardson Company, Inc. sued the defendant, Stephen W. Brockbank, for breach of contract, fraud, conversion, misappropriation of trade secrets and wilful and wanton misconduct in connection with and as a result of Brockbank's alleged wilful failure to comply with the terms of a series of employment contracts and other written agreements between them. As alleged in the plaintiff's six-count Complaint dated December 9, 1992, the parties' controversy arose under the following factual circumstances.
Plaintiff T. O. Richardson Company, Inc. has at all times relevant to this action been a registered investment advisor which manages investments for individuals, corporations, educational institutions and other entities. CT Page 2871 Complaint, Count I, § 3. Pursuant to a written employment contract dated August 20, 1990 (1990 Agreement), defendant Brockbank started working for Richardson on September 1, 1990 as a Senior Vice President. Id., § 4. Under the terms of the 1990 Agreement, Brockbank and Richardson agreed as follows:
 a. the Defendant would be responsible for supporting sales and services to individual and corporate accounts with primary emphasis on supporting the accounts of airline pilots;
 b. the Defendant would bring with him to the Plaintiff the Equity Investment Guide ("EIG") a computer software package developed and then being improved upon by the Defendant that uses economic and financial information to manage individual investment portfolios;
 c. the Defendant would provide all source codes and documentation for EIG; and
 d. the Plaintiff would have exclusive rights to use EIG while the Defendant was an employee of the Plaintiff, and, should the Defendant leave the Plaintiff's employ, the Plaintiff would have the right to continue to use EIG but would incur the additional obligation of making a royalty payment to the Defendant.
Id., § 5.[1]
On March 19, 1991, the plaintiff and the defendant entered into another written contract (3/19/91 Agreement), whereby they agreed that
 a. the Defendant would continue to be responsible for providing wholesale services to the airline pilot CT Page 2872 marketing program; and
 b. as set forth in the 1990 Agreement, the Defendant would continue to provide the Plaintiff with a detailed explanation of the workings of EIG.
Id., ¶ 10.
Thereafter, on November 27, 1991, the plaintiff and the defendant entered into a third written agreement (11/27/91 Agreement) which clarified, reaffirmed and modified their first two agreements as follows:
 a. the Defendant would provide the Plaintiff with all source codes, documentation, input, limit factors, and all other material information necessary to the use and generation of EIG (collectively, "Source Code and Documentation"), as soon as possible and from time to time, in such form as the Plaintiff might reasonably request;
 b. the Defendant would provide the Plaintiff with full information regarding any modifications he made to EIG at any time in the future; and
 c. the Plaintiff and the Defendant would enter into a non-disclosure agreement whereby neither party would disclose EIG or any other of the Plaintiff's proprietary or confidential information or trade secrets.
Id., ¶ 12. On that same date, the parties entered into an
"EIG-Non-Disclosure Agreement," which provided that:
 a. the parties would each have full knowledge of all material information CT Page 2873 regarding EIG and such knowledge would be confidential and not disclosed to any individuals, except as therein provided;
 b. should the Defendant leave the employ of the Plaintiff, the parties would negotiate in good faith for the Plaintiff to acquire exclusive rights to EIG;
 c. should the Defendant leave the employ of the Plaintiff, and the parties could not agree upon the terms under which the Plaintiff would acquire such exclusive rights, the Plaintiff would still have the right to use EIG thereafter, such rights to use EIG being contained in the agreement and in the 1990 Agreement;
 d. should any party breach the agreement, it was expressly stipulated that the other party would be irreparably damaged and that there would be no adequate remedy of law, and that, accordingly, the terms of the agreement would thus be specifically enforced;
 e. both the Plaintiff and the Defendant consented to the entry of any temporary restraining order or preliminary or ex parte injunction, in addition to other remedies available at law or in equity, to enforce the provisions of the agreement;
 f. the agreement would survive the employment of the Defendant, and
 g. the agreement would be governed and construed in accordance with the laws of the State of Connecticut. CT Page 2874
Id., ¶ 13.
In a letter dated June 4, 1992, the plaintiff extended the defendant's employment contract to November 30, 1992, on the same terms and conditions as set forth in the 1990 Agreement and 3/19/91 Agreement, as reaffirmed, clarified and modified by the 11/27/91 Agreement. On August 19, 1992, however, the plaintiff terminated the defendant's employment for wilful failure to perform under the terms of the above-described agreements. Id., ¶¶ 14, 15.
Shortly after the defendant's employment was terminated, the plaintiff and the defendant entered into a further agreement in which the defendant agreed to provide the Source Code and Documentation and to assist with the details of some upcoming mailings in return for which the plaintiff agreed to take his telephone messages and to pay him, as a non-employee consultant, an amount equal to his normal salary for a period of ninety days while he sought other employment. Id.
In early October 1992, however, the plaintiff complained to the defendant that he was not performing his contractual obligations with respect to the Source Code and Documentation. Thereafter, when bona fide progress towards the performance of the defendant's obligation to provide the Source Code and Documentation was still not forthcoming, the plaintiff terminated the latter agreement with the defendant for non-performance; Id., ¶ 15.
Following repeated demands by the plaintiff that the defendant finally provide it with the EIG source codes and detailed explanation of the workings of EIG as well as other documentation necessary for the plaintiff to evaluate, understand, use and operate EIG or any versions thereof, the plaintiff filed this lawsuit.
In Count One of its Complaint, the plaintiff claims that the defendant breached the above-described provisions of his three employment agreements and his post-employment consulting agreement by denying it access to the EIG Source Code and Documentation, and thus preventing it from using and operating EIG in the conduct of its investment management business. The plaintiff claims that the effects of the defendant's continuing breach of those agreements CT Page 2875 have been twofold: first, to deprive it of a valuable and expensive tool for which it has paid out significant sums of money with no return on its own investment; and second, to unjustly enrich the defendant, by affording him a well-paid opportunity to develop and improve the program, for his own sole use and profit, at the plaintiff's expense. On that basis, the plaintiff claims, in the alternative, that it is entitled either to specific performance of all its agreements with the defendant, including that portion of each agreement which required the defendant to supply it at once with the EIG Source Code and Documentation plus all other information it would need to understand, evaluate and operate EIG, or to recover compensatory damages for the money it expended on the development and improvement of EIG in addition to a temporary or permanent injunction enjoining the defendant from using, selling, licensing or in any way profiting from EIG.
Count Two of the Complaint, alleging fraud, is based on the claim that the defendant entered into each of the aforedescribed agreements with the intent to preserve exclusively for himself the ability to use and operate EIG. Complaint, Count II, ¶ 27. With his repeated false promises to provide the plaintiff with the Source Code and Documentation, the defendant is claimed to have fraudulently induced the plaintiff to enter into each such agreement and to expend considerable sums of money in the futile hope of having the right and ability to make prompt and effective use of EIG.
Count Three of the Complaint is expressly based on the allegation of Counts One and Two. In it, the plaintiff claims that the defendant intentionally and maliciously converted monies belonging to it, in alleged violation of General Statutes § 52-564.
In Count Four of the Complaint, the plaintiff claims that the defendant violated General Statutes § 35-50et seq., the Uniform Trade Secrets Act, by making a back-up copy of certain computer files containing its customer lists and money management procedures and failing to return them to the plaintiff after he was terminated from employment. As a remedy for this alleged misconduct, the plaintiff sought an order from this Court requiring specific performance of the parties' non-disclosure CT Page 2876 agreement in the form of an injunction requiring the defendant not to detain, use or disclose the above-described trade secrets.
Court Five of the Complaint incorporates all the allegations of Count One through Four of the Complaint, and alleges that the defendant's conduct, as therein described, was engaged in wilfully, maliciously and without reasonable justification or excuse, in reckless and wanton disregard of the plaintiff's rights.
Finally, Count Six of the Complaint alleges a wholly separate breach of contract based on the defendant's claimed failure to repay a $2200 personal loan under the terms of a promissory note calling for repayment of the principal sum on demand plus interest at the annual rate of 5%.
On January 4, 1993, the day before the return date listed on the Complaint, defendant Brockbank filed his pro se appearance in this case. Shortly thereafter, he served the plaintiff with a lengthy document entitled Answer and Counterclaim,[2] to which the defendant duly pleaded on January 22, 1993 by filing a Request to Revise.
Nearly ten months later, the defendant having failed to file either an objection to the plaintiff's Request to Revise or a revised Answer and Counterclaim conforming to the Request to Revise, the plaintiff moved this Court, under Section 363A of the Connecticut Practice Book, that the defendant be defaulted for failure to plead. In accordance with the procedure established by Section 363A, the plaintiff's motion was granted "by the clerk upon filing, without placement on the short calendar." Id.
On November 17, 1993, the day after the defendant was defaulted as aforesaid, the plaintiff filed a claim for a hearing in damages. Upon the filing of said claim, the case was duly scheduled for a hearing in damages on December 6, 1993, and a notice of the hearing was sent out by the clerk of this Court.
On December 6, 1991, no motion to set aside the default having been filed by defendant Brockbank, the hearing in damages went forward as scheduled, with only the CT Page 2877 plaintiff, through its counsel and its witnesses, in attendance. At the hearing, the Court heard testimony from the plaintiff's president, Samuel Bailey, and its Vice President for Operations, Kathleen Messer-Russo.
Mr. Bailey provided the Court with a rough overview of the plaintiff's dealings with the defendant during the course of the defendant's employment. Tracking generally the allegations of Counts One and Two of the Complaint, he explained, as the Complaint had alleged: that the plaintiff had hired the defendant because of its interest in making use of the defendant's EIG program; that the defendant had induced it to believe that it would be able to use the program under the terms set forth in their several employment contracts, as described in the Complaint; that to make use of EIG, it was necessary to obtain from the defendant all source codes for and documentation explaining the operation of EIG; that, though the defendant promised on several occasions to give the plaintiff such source codes and documentation, he consistently refused to do so at any time during his employment with the plaintiff or thereafter, in direct violation of his employment agreements; and that the defendant was then using EIG on behalf of another investment firm in the State of Connecticut. Mr. Bailey further testified that as a result of the defendant's conduct, the plaintiff has never been able to use EIG in the conduct of its business.
As relief for the defendant's conduct, the plaintiff sought to obtain a copy of the Source Code and Documentation, as described in its agreements with the defendant, as well as money damages for all the monies it was fraudulently induced to pay the defendant to develop EIG. At no point did Mr. Bailey testify that the plaintiff owned EIG. Rather, he claimed that the plaintiff's contracts with the defendant gave it the right to use EIG and its source codes — exclusively while he worked for the plaintiff, non-exclusively thereafter — and to receive updates of the basic program even after the termination of the defendant's employment.
Ms. Messer-Russo then testified that she had calculated the total damages which the plaintiff had sustained by reason of the defendant's breach of his CT Page 2878 contractual obligations to be $163,000. Those damages included $33,277 for expenses incurred by the defendant for the further development of EIG, $117,692 in total salary paid to the defendant, and $12,197 in attorney's fees to prosecute this action. In addition, there was the $2200 loan from the plaintiff to the defendant which the defendant had failed to repay upon demand.
Finally, Mr. Bailey was recalled to testify as to what proportion of defendant Brockbank's time he spent working for the plaintiff was devoted to developing the EIG program which the company could never use. According to Mr. Bailey, two-thirds of the defendant's time working for the plaintiff in the first year of his employment was spent working on EIG, and eighty percent of his time in the second year of his employment was spent on EIG.
At the conclusion of the hearing, the court entered the following orders: (1) that the defendant disclose to the plaintiff all source codes for the EIG program, including that portion of it known as STAR, on or before December 31, 1993; that the defendant disclose to the plaintiff full information concerning any modifications he has made to STAR or EIG since the date of his termination by the plaintiff; that the defendant provide to the plaintiff, on or before December 31, 1993, any software which was necessary to de-encrypt the material which had been put in the EIG program; and that the defendant pay the plaintiff compensatory damages in the amount of $90,532, and exemplary damages in the amount of $12,197. Judgment for the plaintiff was entered on the defendant's counter-claims.
On July 7, 1994, approximately seven months after the foregoing judgment was entered, defendant Brockbank moved this Court to "reopen" said judgment on several grounds, including but not limited to fraud in obtaining the judgment. Over the several months which followed the filing of this motion, the defendant narrowed his grounds for opening the judgment to his claim of fraud. Eventually he presented those claims to the Court at a long-delayed hearing on October 28, 1994. Following the hearing, at which Mr. Brockbank testified briefly under questioning by plaintiff's counsel and presented oral and written arguments in support of his claim, the parties submitted CT Page 2879 additional briefs to the Court. The defendant's final brief was received by this Court on November 23, 1994.
 I
In Connecticut, it is well-established that the Court has no power to open a judgment more than four months after it is entered unless upon grounds of fraud, duress, accident or mistake. Conn. Prac. Bk. § 326; Solomon v.Keiser, 22 Conn. App. 424, 577 A.2d 1103 (1990). Where a party seeks to open a judgment on grounds of fraud, it must establish its claim by clear, precise and unequivocal evidence of the alleged fraud. Connell v. Colwell,214 Conn. 242, 252, 571 A.2d 116 (1990); DeLuca v. C. W.Blakeslee Sons, Inc., 174 Conn. 535, 546, 391 A.2d 170
(1978). In particular, the evidence must prove that the party claimed to have committed the fraud intentionally or recklessly made false statements to the Court with the purpose of inducing the Court to enter judgment in its favor, and that said false statements did indeed induce the Court to so enter judgment. Id.
 II
In this case, the defendant's claims of fraud have not been proved at all, much less established by clear, precise and unequivocal evidence. Distilled to their essence, those claims are as follows: (A) that the plaintiff proffered a false employment contract at the hearing in damages; (B) that the plaintiff presented false testimony concerning its ownership of EIG/STAR and of all source codes and documentation necessary to its proper use and operation; (C) that the plaintiff presented false and misleading testimony concerning the reasons why the defendant was hired and the way in which he spent his time while employed; and (D) that the plaintiff presented false and misleading testimony that it has been damaged by not having access to EIG/STAR source codes.
A. False Employment Contract
The defendant's initial claim of fraud is predicated upon a simple factual mistake on his part which became evident at the October 28, 1994 hearing on his motion to reopen. At that time, the plaintiff questioned the CT Page 2880 defendant on this aspect of his claim by showing him a document which had indeed been included in a separate offer of proof in support of an application for a temporary injunction, and elicited his agreement that that was the very document whose alleged presentation to the Court at the hearing in damages was claimed to constitute fraud.
In fact the record clearly shows that the document was never introduced at the December 6, 1993 hearing in damages, and thus played no role whatsoever in leading the Court to enter judgment as it did. Instead, the record of the hearing in damages clearly shows that the only contractual documents upon which the plaintiff relied in support of its claim where those appended to the plaintiff's Complaint. Far from questioning the validity of those documents, the defendant expressly relies upon them in support of his motion to reopen.
For these reasons, the defendant's initial claim of fraud is utterly baseless.
B. False Claim of Ownership of EIG/STAR
The gravamen of the defendant's claim of fraud is that the plaintiff, through its president, Mr. Bailey, presented false testimony at the hearing in damages that by employing the defendant, the plaintiff had acquired ownership of the EIG/STAR program and of all associated source codes, documentation and other information necessary to the proper use and operation of that program. That testimony, he asserts, is directly contradicted by the language of the contracts in question, which clearly establish the process by which the plaintiff might one day come to acquire such intellectual property from its one true owner, the defendant himself.
The Court must agree with the defendant that under the contracts attached to the plaintiff's Complaint, on which both parties claim to rely, he alone is the owner of EIG/STAR and of all source codes and documentation necessary to its use and operation. It disagrees, however, with the defendant's claim that the plaintiff fraudulently obtained the challenged judgment by presenting false testimony concerning the nature of its entitlement to gain access to, obtain a copy of, and make full use of that CT Page 2881 property.
The testimony presented at the hearing in damages was based expressly on the contract documents themselves. Indeed, those documents were made full exhibits at the hearing, just as they had been made full exhibits in the plaintiff's Complaint.
Under the contracts, the plaintiff did not claim that it had a right of access to EIG/STAR, its source codes and other documentation because it had acquire ownership of that property. Instead, it claimed that by contract, it had acquired the exclusive right to use and operate EIG/STAR during the period of the defendant's employment and the non-exclusive right to continue using and operating the program after such employment was over, provided that in that post-employment period, the defendant, as owner of the program, could also use the program for his own purposes.
The plaintiff then claimed that to make proper use of EIG/STAR it needed to have access to and a full understanding of the program, and to that end, that it needed to have access to the program's source codes and other documentation explaining how and why it worked as it did. Access to this information, it claimed, was necessary both to make the program work and to assure the plaintiff's principals that any investment advice they might give based upon it was sound and appropriate. The Court was persuaded by this testimony, and by the contract documents themselves, that this was both true and fully consistent with the understanding and agreement of the parties throughout the course of their relationship. Indeed, the several contracts presented to the Court made it clear at all times that the plaintiff's legitimate entitlement thereunder was not only to have EIG/STAR software on their premises, available for their use with the assistance of the defendant, but to have as well all source codes and other documentation that were necessary to make wholly independent use of EIG/STAR without the defendant's assistance.[3] Failure of the defendant to supply the plaintiff with this information has prevented the plaintiff from using EIG/STAR at any time despite its substantial payments of salary to the defendant to develop the program. CT Page 2882
In short, the defendant's claim that the plaintiff presented false testimony at the hearing in damages concerning its ownership of EIG/STAR is simply wrong. It did not. What its witnesses stated instead is that by virtue of the plaintiff's contracts with the defendant, the plaintiff has acquired a right to have access both to the program itself and to all source codes and documentation necessary to its proper use and operation. The plaintiff has been irreparably harmed by the defendant's persistent refusal to honor its contractual obligations.
 C. False Claim as to Principal Reason for and Principal Activity During Employment
The defendant further claims that the plaintiff defrauded the Court by presenting false testimony in support of the following allegations: (1) that the principal reason the defendant was hired by the plaintiff was to acquire access to his EIG/STAR computer program; and (2) that he spent two-thirds of his time in the first year of his employment and eighty percent of his time thereafter in working on the development of that program. In support of these claims, he posits, in a written pleading entitled Argument For Motion To Reopen Judgment on Claims and Counter Claims, dated October 28, 1994, that the principal reason he was hired was to develop the plaintiff's investment business with airline pilots, and that while in the plaintiff's employ he devoted most of his time to that work.
This argument is contradicted by the contracts here at issue, which plainly give special prominence to the defendant's anticipated work on the development of EIG/STAR. It is also contradicted by the defendant's deposition testimony, which was introduced at the hearing in damages as Exhibit G. At his deposition, the defendant expressly admitted that when he negotiated his original contract of employment, he "offer[ed] STAR as one of the reasons that should lead the company to hire" him.
More importantly, however, this argument is not supported by any evidence. The defendant's "Argument" was not submitted as evidence, and it does not contain or refer to evidence, apart from the contractual documents themselves. Because nothing in the evidence before this CT Page 2883 Court, either at the hearing in damages or on this motion to reopen, contradicts the testimony of Mr. Bailey, this Court has no basis upon which to find that that testimony was false, much less that it was intentionally misleading, and thus fraudulently presented.
As for the defendant's dispute with Mr. Bailey's assignment of percentages to the amount of time the defendant devoted to EIG/STAR while working for the plaintiff, the defendant has similarly offered no evidence whatsoever to contradict Mr. Bailey's assertions. Absent such evidence, he has obviously failed to prove fraud by any standard, much less by the especially high standard required under Connecticut law.
D. False Claim of Damages
On page 13 of his Argument For Motion to Reopen dated October 28, 1994, the defendant lists five reasons why the plaintiff has allegedly not been damaged by not having access to the EIG/STAR source codes. Reason a), that the plaintiff made no attempt to acquire STAR when the defendant was terminated in August 1992, is contradicted by the filing of the present action. Reason b), which ascribes improper motives to the plaintiff for the filing of this action when it did, is both immaterial and unsupported by the facts here in evidence. Reason c), that after the defendant left the plaintiff's employ, the plaintiff told its clients that STAR was no longer a product of the plaintiff, but that the plaintiff could offer other investment management techniques in its place, is also immaterial, and based upon factual assertions not in evidence. It confirms, however, the reality that without the defendant in their employ, and in the absence of the source codes necessary to use and operate STAR, the plaintiff could not tell its clients that it would ever be able to employ that program to manage their investments. Reason d), that STAR was never used to manage existing or new money by the plaintiff, merely confirms Mr. Bailey's testimony that until the defendant provided the plaintiff with the source codes, it neither could nor would rely on EIG/STAR as a basis for the giving of investment advice, for it could not independently evaluate the program or verify its investment assumptions. CT Page 2884
Finally, Reason e), that the plaintiff did not seek to execute upon its judgment until exactly 4 months and 1 day after it was rendered, is also immaterial. In fact, the judgment, by its terms, was self-executing. The defendant was required to comply with it by December 31, 1993. The defendant received written notice of the judgment in timely fashion but did not appeal therefrom, move to open the judgment, or take any steps to comply therewith. He can hardly be heard to fault the plaintiff for not timely pursuing its rights. He cannot, moreover, predicate any claim of fraud upon the plaintiff's entirely appropriate conduct in the handling of this case.
For the foregoing reasons, the Court hereby denies the defendant's motion to reopen judgment.
Michael R. Sheldon, J.