[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I.
The plaintiff filed a Substituted Complaint dated August 8, 1994, and it is on this complaint only on which the court is required to rule. There are six counts pleaded but the second count is withdrawn. The remaining counts are as follows:
Count 1. Plaintiff alleges an employment contract starting November 1, 1990, as a sales engineer. The contract is Exhibit A. It calls for an annual salary of $50,000 of which $13,000 is to be regarded as a loan to the defendant. Plaintiff agrees to purchase 2000 shares of defendant at $40 a share. On November 1, 1991, plaintiff will be "awarded" 700 shares of defendant "unless he chooses not to work full time for defendant during the year." Plaintiff agrees not to compete for three years when he leaves employment of defendant. If he chooses to sell his stock, restrictions apply.
Plaintiff paid $80,000 to defendant for the stock. On June 6, 1991, plaintiff resigned from defendant's employ. He claims this CT Page 3831 was done under duress. Plaintiff also claims if he desired to sell his stock, he would be paid $40 a share, the net book value determined as of the last day of the month preceding notice of plaintiff's intent to sell. He alleges such notice was given in July 1991 and defendant refused to pay. He claims unjust enrichment of defendant because defendant has had the benefit of the $80,000 plaintiff paid to it, and the stock has no market value "outside of the closely held defendant."
Count 2. Withdrawn.
Count 3. Plaintiff alleges defendant knew the stock had no "outside" market value and plaintiff would not be obligated to repurchase the stock. Defendant's actions were designed to defraud plaintiff and deceive him in violation of federal and state blue sky laws.
Count 4. Plaintiff alleges dissolution of the defendant is necessary for the protection of his interest.
Count 5. Plaintiff alleges a failure of consideration and the refusal to repurchase results in a right of rescission.
Count 6. Plaintiff alleges defendant violated a fiduciary duty to him.
Plaintiff demands damages, attorney's fees, a receiver, dissolution of the corporation, interest under Connecticut General Statutes § 36-498, and rescission.
 II.
It is apparent that both plaintiff and defendant handled this transaction in an exceedingly lax if not sloppy manner. There is for example, nothing in Exhibit A providing for defendant to repurchase the stock sold to plaintiff, although plaintiff continues to make this claim. Plaintiff is an engineer by education and is not by any means illiterate or unknowledgeable. While it is true that Exhibit A was drawn by defendant, still plaintiff saw fit to sign it without adding any provisions for repurchase of the stock by defendant. Plaintiff made no comment or request for the addition of a provision that defendant repurchase the shares at any time. Even when he terminated his employment, Exhibit G which he signed on June 6, 1991, makes no mention of any obligation on defendant's part to repurchase the CT Page 3832 stock.
Plaintiff makes several unsubstantiated claims not supported in the evidence. For example, his brief asserts that he tendered his stock to defendant on January 6, 1991, "after having been forced out of his employment." The court has found no evidence before it establishing this as a fact. Plaintiff did not leave defendant's employment until June 6, 1991. It is possible this date of January 6, 1991 is a typographical error.
He also claims that the purchase of stock in defendant was required by defendant for his employment with defendant. No mention of this requirement appears in Exhibit A. Moreover, if ownership of stock in the defendant was a necessary requirement, the court wonders how plaintiff would be able to continue working for defendant after tendering his stock for sale to defendant on January 6, 1991, assuming of course, this date is not a typographical error. (Plaintiff's brief, p. 14) It would seem to the court, by inference, that when a person like plaintiff was prepared to invest $80,000 in a venture like defendant's, he was not just buying a few shares of stock to qualify as an employee. Plaintiff had to be aware that defendant was not what might be described as a well established corporation with a thriving business. It might have some potential of growing which it is likely plaintiff saw in its books which were shown to him, and that defendant was struggling to get started. Defendant's disclosure statement (Exhibit 5) reveals the nature of the investment risks involved.
Furthermore, any investor who risks $80,000 in a fledgling corporation such as defendant's must realize that a very considerable gamble is involved. All other things being equal, a shareholder in defendant at best would have but a small voice in the affairs of the defendant. The court finds it difficult to appraise the plaintiff as a naive, unintelligent individual who was being misled into what he was doing.
The court finds it impossible to establish fraud by defendant on the evidence presented. While it certainly was a very inadvisable transaction in which plaintiff made very little effort to protect his interests, still this does not prove fraud. See Polverari v. Pratt, 29 Conn. App. 191, 199. What we have here is a suit for breach of contract. On most counts in this case plaintiff's position suffers from a failure to sustain his burden of proof. Fraud must be strictly proved by clear, precise and CT Page 3833 unequivocal evidence. DeLuca v. C.W. Blakeslee Sons, Inc.,174 Conn. 535, 546.
Similarly, duress can only result when the person claiming that he acted under it must have had no other means of immediate relief from the threatened duress then by compliance with the demand. There must be no reasonable alternative. Plaintiff has not sustained his burden of proof in asserting duress when he signed Exhibits G or J. Nothing prevented him from suing, as he has now, rather than sign Exhibit J. In such a suit he could have sought his claimed 700 shares and back salary.
In the absence of proof of fraud as alleged under the Third Count, the court is not required to consider the "applicable provisions of the federal and state blue sky laws." Furthermore, the court's function is not to proceed beyond the scope of plaintiff's allegations to dig out a cause of action for a party from broad and unspecific references to statutory law.
The exhibits filed did not establish anything about working hours or where plaintiff had to reside. Exhibit A indicates plaintiff could choose to work part time. Plaintiff apparently did well enough in May on a trip with Mikan to Chicago to be complimented by Mikan. It further appears in Exhibit G that "additional salary" owed to plaintiff would be paid within 12 months of June 6, 1991.
The plaintiff claimed $8000 was owed for back salary, but failed to set forth how that figure was reached. The court for that reason cannot find it was owed. In addition he claimed he was owed $13,000 on the "loan" made to defendant. By accepting salary up to June 22, 1991, Exhibit G) it appears he was accepting this in lieu of a balance of salary that might be due on his one year's employment.
In any event the court's judgment is $13,000 due to plaintiff. In the absence of evidence establishing the figures in defendant's brief on its counterclaim, judgment on the counterclaim is rendered for plaintiff. No attorney's fees and no interest on the amount owed to plaintiff are awarded.
GEORGE A. SADEN, STATE TRIAL REFEREE CT Page 3834