[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: EXCEPTION TO ATTORNEY TRIAL REFERREE REPORT(NO. 129)
The plaintiff, Standard Oil of Connecticut, Inc. d/b/a Commercial Heating Supply, commenced suit against the defendants, Southport Contracting, Inc. (Southport) and Jefferson Scinto, to recover a balance due on a commercial credit agreement. The plaintiff alleges that in 1991, Southport and Jefferson Scinto entered into a credit agreement with the plaintiff for the purchase of goods and services. At that time, Scinto executed a personal guarantee for the credit agreement. The plaintiff alleges that it sold and delivered goods to the defendants from CT Page 5495-I August 1, 1991 through June 25, 1992, and that the defendants owed the plaintiff $12,529.41 for these goods.
The defendants filed a special defense in which they alleged that any outstanding obligations due to the plaintiff were owed by an entity known as Bel Air Plumbing, Inc., as opposed to Southport. On February 8, 1993, Bel Air Plumbing, Inc. (Bel Air) was cited in as a party defendant. On September 18, 1995, Bel Air and Scinto were defaulted for failure to plead.
The case was tried to an attorney trial referee (ATR), who filed his report on November 28, 1995. The following facts were found by the ATR. On August 1, 1991, the plaintiff entered into separate credit agreements with two separate corporations, Southport and Bel Air. Scinto was the president of both corporations. Scinto also personally guaranteed the debts or liabilities incurred by the corporations. Prior to August 1, 1991, the plaintiff did not do business with Southport. On August 1, 1991, the plaintiff was informed that Scinto was phasing out Bel Air and opening a new company, Southport. On August 7, 1991, Bel Air made payment to the plaintiff for invoices pre-dating the credit agreement with Southport. On or about August 1, 1991, Southport commenced doing business with the plaintiff. Scinto testified that at the time Southport issued checks made payable to the plaintiff (dated October 23, 1991, January 17, 1992, and March 5, 1992), Southport was the only company doing business.
The ATR found that the amount due and owing to the plaintiff from Southport and Scinto for goods and services rendered to Southport from August 1, 1991 through July 1, 1992 was $12,699.76 plus interest and attorney's fees in the amount of $2,983.45. The ATR noted that judgment by default had previously entered against Bel Air, but found that Bel Air was not liable for any damages. The ATR recommended that judgment should be rendered in favor of the plaintiff against Southport and Scinto for the amount due and owing, plus interest and attorney's fees.
Pursuant to Practice Book § 438, if a party wishes to challenge any findings of fact or rulings made by the ATR, he or she may file a motion to correct within two weeks of the filing of the report. If the ATR fails to correct a report as requested, the moving party may file exceptions seeking correction of the report by the court within ten days after the decision on the motion to correct has been filed. Practice Book § 439. Within two weeks after the filing of a report; or if a motion to correct CT Page 5495-J the report has been made, within two weeks from the filing of the decision on the motion; objections to the acceptance of the report should also be filed. Rowan Construction Corp. v. Hassane,213 Conn. 337, 340 n. 2, 567 A.2d 1210 (1990).
On December 7, 1995, the defendants filed a motion to correct the ATR report. The ATR denied the motion to correct on December 12, 1995. On December 28, 1995, the defendants filed an objection to the plaintiff's motion for judgment on the ATR report. On December 29, 1995, the defendants filed a motion for an extension of time to file an exception to the ATR report. After obtaining a two week extension of time from January 19, 1996, the defendants filed an exception to the ATR report on January 30, 1996.
The defendants timely filed a motion to correct the ATR report. However, the defendants failed to timely move for an extension of time to file exceptions to the ATR report. The ATR denied the defendants' motion to correct on December 12, 1995. The defendants should have filed the exception to the report or their motion for an extension of time within two weeks from December 12, 1995. The defendants failed to do so, as their motion for an extension of time was filed on December 29, 1995. Nevertheless, the court will address merits of the defendants' exceptions.
"The reports of [attorney trial] referees are `reviewable in accordance with well established procedures prior to the rendition of judgment by the court. Practice Book §§ 428 through 445.'" Dills v. Enfield, 210 Conn. 705, 712-13,557 A.2d 515 (1989). The trial court shall render judgment as the law requires upon the facts as found by the attorney trial referee. Id., 713; Practice Book § 443.
Because the defendants timely filed a motion to correct certain findings made by the ATR, the court will review these subordinate factual findings. See Garofalo v. Argraves, 147 Conn. 685,687, 166 A.2d 158 (1960), and LiVolsi v. Pylypchuk, 12 Conn. App. 527,528, 532 A.2d 593 (1987).
The defendants challenge the ATR's fifth and ninth findings of fact by way of both their motion to correct and their exception to the ATR report. In finding #5, the ATR found that: "On or about August 1, 1991, plaintiff was informed that Scinto was phasing out Bel Air and was opening a new company, Southport." The defendants contend that finding #5 is erroneous because the CT Page 5495-K evidence shows that at that time, both Bel Air and Southport were both viable and operating corporations.
In finding #9, the ATR found that: "Scinto testified that at the time Southport issued checks made payable to the plaintiff dated October 23, 1991, January 17, 1992, and March 5, 1992 (Plaintiff's exhibit E) Southport was the only company doing business." The defendants contend that this finding is erroneous because Scinto testified that at that time, Southport was the only company "bringing in any money." The defendants contend that there is a difference between a company "not doing business" and a company "not bringing in any money."
Based on its independent review of the transcript, the court will correct findings #5 and #9 of the ATR report so that they reflect the fact that Bel Air was a "viable" corporation that was attempting to "do business." In so doing, the court notes that these changes have no effect on the ultimate conclusions of the ATR. The fact that Bel Air was still operating and attempting to solicit business while "not bringing in any money" neither proves nor disproves the ATR's conclusion that the debts were incurred by Southport and Scinto.
In support of their exception, the defendants argue that the ATR's conclusion should be changed to reflect that the amounts due were the obligations of Scinto and Bel Air. "Upon conflicting evidence, it is peculiarly within the province of the trier of fact to judge the credibility of the witnesses and to draw proper inferences." DeLuca v. C.W. Blakeslee Sons, Inc., 174 Conn. 535,547, 391 A.2d 170 (1978). While testimony established that the plaintiff was not sure as to which entity owed money on the credit agreement because both Bel Air and Southport were billed under the same account number, the plaintiff's evidence and the testimony of Scinto established that goods and services were purchased by Scinto, and that checks were issued to the plaintiff by Southport for the purpose of paying for the goods and services purchased by Scinto. The court notes that the defendants failed to present any evidence in the form of invoices, purchase orders, checks or other documentary evidence to demonstrate that the debt was incurred by Bel Air as opposed to Southport. Thus, it was reasonable for the ATR to conclude that if the plaintiff was being paid by checks issued by Southport, then Southport was the entity that was ordering goods and services from the plaintiff. The facts found by the ATR support his conclusion that Southport was liable for the debt owed to the plaintiff. CT Page 5495-L
As previously stated, Scinto personally guaranteed the debts incurred by both entities. Thus, the ATR, in concluding that Scinto is liable for the debt, clearly reached the correct result.
Accordingly, the court overrules the defendants' exception to the ATR report.
Therefore, the recommendation of the ATR is hereby entered as a judgment in favor of the plaintiff and against Southport Contracting, Inc. and Jefferson Scinto on his guarantee in the amount of $12,699.76 plus interest from November 1, 1992 and attorney's fees in the amount of $2983.45.
JOHN W. MORAN, JUDGE