SALVATORE GABRIELE ET AL. *v.* BENITO BRINO, TRUSTEE OF THE BENITO BRINO PENSION PLAN, ET AL.
(AC 24711)

Lavery, C. J., and Bishop and West, Js.

Argued June 10—officially released October 12, 2004

*Barry T. Pontolillo*, with whom was *Sebastian S. Ciarcia*, for the appellant (named defendant).

*Beth A. Steele*, for the appellees (plaintiffs).

*Opinion*

BISHOP, J. The defendant Benito Brino,[1] trustee of the Benito Brino pension plan, appeals from the judgment of the trial court ordering specific performance of a contract to convey real property owned by the defendant to the plaintiffs, Salvatore Gabriele and Linda Gabriele. On appeal, the defendant claims that the court incorrectly concluded that (1) the contract satisfied the statute of frauds, General Statutes § 52-550, and (2) the doctrine of partial performance removed the contract

---

[1] This action was brought against Benito Brino, trustee, as owner of the property, and Frank Brino as Benito Brino's agent in fact. Because only Benito Brino has appealed, we refer to him as the defendant.

from the statute of frauds. We agree and, accordingly, reverse the judgment of the trial court.

The following facts are relevant to the issues on appeal. The plaintiffs have leased the property located at 1028 Poquonnock Road in Groton from the defendant since December, 1999. During the term of their lease, the plaintiffs attempted to purchase the property from the defendant. In July, 2001, the plaintiffs and the defendant agreed on a sales price of $565,000 with a closing date of September 15, 2001. The scheduled closing did not take place, however, as the plaintiffs were able to secure only $450,000 in financing. The plaintiffs then made a counteroffer to the defendant to purchase the property for $450,000 that was promptly rejected.

The plaintiffs next attempted to obtain financing from another lending institution to borrow $565,000, the sales price set forth in the original agreement. They were successful in securing an agreement from Dime Savings Bank (bank) to lend them the entire $565,000 as required by the original contract. On April 4, 2002, at the behest of the bank, the plaintiffs drafted an addendum to the July, 2001 sales agreement and faxed that agreement to the defendant. The April 4, 2002 addendum called for a May 5, 2002 closing date. Although the defendant orally accepted the terms of that agreement, the addendum was signed on May 16, 2002, by Frank Brino, the defendant's son and the trust manager. Because the addendum was signed after the closing date, the bank refused to acknowledge its validity.

The plaintiffs then drafted a second sales agreement dated June 13, 2002. The terms of that agreement were identical to the April 4, 2002 agreement except that it did not contain a closing date. Instead, it provided that it would be effective from the date signed. That agreement was signed by Frank Brino and the plaintiffs on June 16, 2002. The bank accepted that sales agreement and

agreed to loan the plaintiffs the money they needed to close on the property. The plaintiffs then advised the defendant orally and in writing that they had their financing and were ready to close. Despite repeated requests, the defendant refused to convey the property to the plaintiffs.

On December 13, 2002, the plaintiffs initiated this action seeking specific performance of the June 13, 2002 agreement. The defendant denied the allegations set forth in the plaintiffs' complaint and raised the special defense that the agreement failed to satisfy the statute of frauds.

Following a trial to the court, the court rendered judgment in favor of the plaintiffs. The court concluded that the plaintiffs were ready, willing and able to perform the contract and that the defendant to date had failed to transfer the property to the plaintiffs. The court rejected the defendant's special defense of the statute of frauds and concluded that the June 13, 2002 sales agreement or the combination of the original agreement of July, 2001, the April 4, 2002 agreement and the June 13, 2002 agreement satisfied the statute of frauds. The court also found that the doctrine of partial performance was applicable to remove the contract from the purview of the statute of frauds. Specifically, the court concluded that the plaintiffs' application for a loan, which occurred on September 3, 2002, and their removal of oil tanks on the property, which occurred on October 31, 2002, constituted acts sufficient to invoke the equitable doctrine of partial performance. Accordingly, the court awarded specific performance of the agreement dated June 13, 2002. This appeal followed.

We begin by setting forth the legal principles that guide our inquiry. The statute of frauds, § 52-550 (a), provides in relevant part that "[n]o civil action may be maintained in the following cases unless the agreement,

or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party to be charged . . . (4) upon any agreement for the sale of real property or any interest in or concerning real property . . . ." "The requirements of a memorandum of sale to satisfy the statute of frauds in this [s]tate are too well established to require extended consideration. It must state the contract between the parties with such certainty that the essentials of the contract can be determined from the memorandum itself without the aid of parol proof, either by direct statement or by reference therein to some other writing or thing certain; and these essentials must at least consist of the subject of the sale, the terms of it and the parties to it, so as to furnish evidence of a complete agreement." *Santoro* v. *Mack,* 108 Conn. 683, 687–88, 145 A. 273 (1929).

I

The defendant first claims that the court incorrectly concluded that the June 13, 2002 agreement satisfied the statute of frauds.

The defendant does not dispute that the agreement of June 13, 2002, was in writing, that it contained the purchase price and the subject of the sale. Rather, the defendant claims that certain terms, most notably, a designation of the seller, were missing. Consequently, the defendant claims that the purported agreement did not satisfy the requirements of the statute of frauds. We agree.[2]

It is well established that in order to satisfy the statute of frauds, § 52-550, the written agreement must contain a designation of the seller. See *DeLuca* v. *C. W. Blakeslee & Sons, Inc.,* 174 Conn. 535, 543–44, 391 A.2d 170 (1978) ("[s]ince the memoranda did not contain the

---

[2] Because we agree with the defendant that a contract for the sale of real property must designate the seller, we need not address his other claims that additional terms were missing from the writing.

name of the seller there was no compliance with the statute of frauds"). It is undisputed that the owner and seller of the property was the defendant and that his name was not contained in the agreement. Although the plaintiffs correctly note that our Supreme Court has stated that the seller or "some designation of him" such as "him, you and Friend George"; (internal quotation marks omitted) *Shoag* v. *Sheftel*, 99 Conn. 541, 543–44, 121 A. 799 (1923); will satisfy the statute of frauds, the agreement of June 13, 2002, does not contain any designation of the defendant as the seller. Consequently, that agreement fails to satisfy the statute of frauds. See *DeLuca* v. *C. W. Blakeslee & Sons, Inc.*, supra, 543–44 (holding that contract that mentioned only agent and not seller failed to satisfy statute of frauds).[3]

II

The defendant next claims that the court improperly concluded that the combination of the original agreement of July, 2001, the April 4, 2002 agreement and the June 13, 2002 agreement satisfied the statute of frauds. Specifically, the defendant argues that the court incorrectly admitted the original July, 2001 sales agreement into evidence and that the agreements did not specifically reference each in order for them to be read together. The plaintiffs contend that the court's evidentiary ruling was correct and that the documents, when read together, state the essential terms of the contract and, as such, satisfy the statute of frauds. We disagree with the plaintiffs.

Even if we assume arguendo that the court properly admitted the original July, 2001 agreement and could

---

[3] The defendant argues that because the line for the seller in the June 13, 2002 agreement was blank, the agreement was ambiguous as to the identity of the seller. That argument lacks merit. Parol evidence is inadmissible to prove the material terms of a contract. See *Santoro* v. *Mack*, supra, 108 Conn. 687–88.

consider the agreements in combination, the cumulative impact of those purported agreements nevertheless fails to satisfy the statute of frauds. Although under certain circumstances, the court may read documents together to satisfy the statute of frauds; *Vachon* v. *Tomascak*, 155 Conn. 52, 56–57, 230 A.2d 5 (1967*)*; the multiple writings still must state the essential terms of the contract without the use of parol proof. See *Killion* v. *Davis*, 69 Conn. App. 366, 372, 793 A.2d 1237, cert. denied, 260 Conn. 931, 799 A.2d 295 (2002). In this instance, the original sales agreement lists the defendant as the seller, whereas the subsequent two agreements list Frank Brino as the seller.[4] Therefore, even when they are read together, the documents are inconsistent. Because the designation of the seller is an essential term required by the statute of frauds, those inconsistent documents do not satisfy the statute of frauds.

## III

Last, the defendant claims that the court improperly concluded that the plaintiffs' partial performance removed the contract from the statute of frauds. Specifically, the defendant argues that the court incorrectly concluded that the repudiation occurred on October 16, 2002, and not August 27, 2002, as alleged in the plaintiffs' complaint. Consequently, he argues that because the plaintiffs' performance occurred after August 27, 2002, it could not be considered by the court as part performance of a contract. We agree in part with the defendant.

---

[4] The plaintiffs argue that because the lines for the seller in the two addenda were blank, Frank Brino was not identified as the seller and therefore the addenda do not contradict the July, 2001 agreement. Because Frank Brino's name is printed directly beneath the blank space for the seller's name, the two addenda do clearly identify Frank Brino as the seller. Accordingly, as noted, the designation of Frank Brino as the seller contradicts the July, 2001 agreement designating the defendant as the seller.

The following additional facts are necessary for the resolution of the defendant's claim. In their complaint, the plaintiffs alleged that the defendant, via facsimile, repudiated the contract on or about August 27, 2002. At trial, however, the plaintiffs introduced evidence that although the facsimile was dated August 27, 2002, the plaintiffs did not receive the repudiation until October 16, 2002. Despite the allegation set forth in the plaintiffs' complaint, the court treated the repudiation as having occurred on October 16, 2002. The court further concluded that an application by the plaintiffs for a bank loan on September 3, 2002, and the removal by the plaintiffs of underground oil tanks on October 31, 2002, constituted partial performance of the contract sufficient to remove the contract from the statute of frauds.

Even if we assume, without deciding, that the court correctly concluded that the repudiation occurred on October 16, 2002, under the facts of this case, the doctrine of partial performance is inapplicable to remove the contract from the statute of frauds. It is a bedrock tenet of our statute of frauds jurisprudence that "[i]n . . . cases where one party, in reliance upon the contract, has partly performed it to such an extent that a repudiation of the contract by the other party would amount to the perpetration of a fraud, equity looks upon the contract as removed from the operation of the statute of frauds and will enforce it by specific performance or give other relief as the case may be. . . .

"The rule which we have recognized and enforced in this [s]tate is that acts will be held to be in part performance if they are such as clearly refer to some contract existing between the parties, in relation to the subject-matter in dispute." (Citations omitted; internal quotation marks omitted.) *Santoro* v. *Mack*, supra, 108 Conn. 690–91. In order for acts to sufficiently reference a contract they must occur prior to one party's repudia-

tion of the contract. See 4 A. Corbin, Contracts (Rev. Ed. 1997) § 18.7, p. 514 (noting that "the performance [must be] rendered without knowledge that the other party had repudiated the contract or that it was rendered under some kind of compulsion justifying a disregard of the other's repudiation").

In the present case, it is undisputed that the oil tanks were removed on October 31, 2002. As the removal of the oil tanks occurred after the repudiation, that activity was insufficient to be considered part performance. Because, however, the application for the bank loan occurred before October 16, 2002, we must determine whether the application for a bank loan alone was sufficient to satisfy our standards for part performance. Our Supreme Court has stated that acts of a preliminary nature, such as obtaining financing, are insufficient to justify applying the equitable principle of part performance. See *Santoro* v. *Mack*, supra, 108 Conn. 691–92. Accordingly, the plaintiffs' application for a bank loan did not remove the contract from the statute of frauds.

Because neither the June 13, 2002 agreement nor the combination of the three agreements satisfied the statute of frauds and because the doctrine of part performance was inapplicable to remove the contract from the statute of frauds, the court incorrectly concluded that the plaintiffs had a valid contract of sale. Accordingly, the court incorrectly ordered specific performance in favor of the plaintiffs.

The judgment is reversed and the case is remanded with direction to render judgment in favor of the defendant.

In this opinion the other judges concurred.