[Cite as *Graham v. Boerger*, 2015-Ohio-3261.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
DARKE COUNTY

| | | |
|---|---|---|
| KIMBERLY GRAHAM | : | |
| | : | Appellate Case No.2014-CA-17 |
| Plaintiff-Appellant | : | |
| | : | Trial Court Case Nos. 10-1-198 |
| v. | : | 12-4-001 |
| | : | |
| CHRIS H. BOERGER, et al. | : | (Civil Appeal from Common Pleas |
| | : | Court, Probate) |
| Defendants-Appellees | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 14th day of August, 2015.

. . . . . . . . . .

ANDREW T. WHITE, Atty. Reg. No. 0074041, Dysinger & Patry, LLC, 249 South Garber Drive, Tipp City, Ohio 45371
        Attorney for Plaintiff-Appellant

JAMES S. DETLINE, Atty. Reg. No. 0042728, Detling, Harlan & Fliehman, Ltd., 421 Public Square, Greenville, Ohio 45331
        Attorney for Defendant-Appellee, Chris H. Boerger

JOSHUA KOLTAK, Atty. Reg. No. 0078164, 100 South Main Avenue, Sidney, Ohio 45365
        Attorney for Defendant-Appellee, David Boerger

. . . . . . . . . . . .

FAIN, J.

**{¶ 1}** The parties, Kimberly Graham, Diane Birt, and Chris, Theodore, Frank, Jeffrey and David Boerger, are siblings, who shared in the assets of their mother's trust and estate as her beneficiaries. Kimberly Graham appeals from an order of the Darke County Probate Court rejecting her caretaking claim against the estate, after the parties had reached a settlement of all claims.

**{¶ 2}** We conclude that the trial court did not err in interpreting the settlement agreement as a full release of all claims, thus preventing Graham from pursuing additional claims not identified in the settlement agreement. Accordingly, the judgment of the Probate Court is Affirmed.

## I.   The Course of Proceedings

**{¶ 3}**   After Dorothy E. Boerger's death on June 30, 2010, a case was opened in Darke County Probate Court for a complete administration of her estate. Pursuant to her will, Dorothy Boerger directed the payment of all debts of her estate, with the residue passing to her seven children in equal shares. The will appointed Chris and Theodore Boerger, as co-executors of the will, which was approved by the trial court in an entry appointing them as fiduciaries for the estate. Chris and Theodore had previously been named as co-trustees of the Dorothy E. Boerger Trust established in 1997. In the first inventory and appraisal, the estate was valued at $238,159.82.   On the schedule of assets, it was noted that payments were being made on two promissory notes for loans to two of the seven children, which had substantial balances owed to the estate:   $102,000

and $92,400. The relationship between the siblings became hostile, and allegations regarding missing assets and debts of the estate were reported to the court. One of the executors produced two letters, allegedly signed by the mother two hours before her death, itemizing advancements and loans, and expressing an intention to reduce certain indebtedness. More letters were sent to the trial court with allegations of mismanagement of the estate, which led to a status conference conducted before the court Magistrate. A Magistrate's Order described the acrimony between the siblings, detailed the contested issues, and encouraged the parties to reach a global settlement of all claims. Dkt. 83-87. Shortly thereafter, Graham filed a motion to remove her brothers as fiduciaries of the estate and to appoint an attorney as a neutral administrator. The trial court approved the request to remove the co-executors and approved appointment of an attorney as the fiduciary of the estate.

{¶ 4} Graham also filed a separate action in the Darke County Probate Court to remove her brothers as co-trustees of the Dorothy E. Boerger Trust. Chris and Theodore both filed their resignations as co-trustees, and the court approved appointment of the same attorney who had been appointed as fiduciary for the estate. Numerous documents were filed attempting to challenge financial transactions of the trust, and allegations were made suggesting theft, fraud, conversion and other misfeasance. In a document itemizing the assets, disbursement, and receipts for the trust from 6/11/12 to 3/5/13, it was reported that the trust had assets worth $664,314.23. The parties attempted to engage in discovery, and the matter was set for trial to resolve contested issues. Graham's 150-page trial brief attempts to summarize and document the issues related to each of the siblings, whether the debts should be considered

advancements, and whether the law requires reimbursement to an estate of any advancement to a beneficiary when the amount exceeds that beneficiary's share of the estate. After two days of trial, Graham's attorney prepared a proposed written settlement agreement, exchanged drafts with opposing counsel, made revisions to the agreement, and then sent it to the court for approval. On March 6, 2014, a hearing was conducted before the Magistrate, and Graham's attorney explained the amount of each sibling's advancement to be charged against that sibling's share of the estate, and that Graham was reserving the right to file a motion asking for payment of her legal fees from the trust. Approval of the settlement agreement was verbally verified on the record by all seven siblings. During the hearing, the Magistrate confirmed the finality of the agreement by stating, "The whole idea is being no more delay. It's done. There's no appeal of my decision or appeal to the Court of Appeals." The written settlement agreement prepared as an "Agreed Judgment Entry" was signed by all siblings, and their attorneys, and approved by the Magistrate and the trial judge. The Agreed Judgment Entry acknowledges that the entry was intended to resolve the disputes between the parties regarding "the amount and nature of the debts and advancements that are properly chargeable against the share of each beneficiary."   It further states that it was intended "to bring a resolution to this dispute, to allow for the assets of the Estate and Trust to be distributed, and for the Estate to be closed and the Trust terminated." Paragraph 4 of the entry provides that Diane's note is adjusted to a zero balance, with no right to any share of the estate residuary and the remaining six siblings will each receive 1/6 of the estate and trust residuary, less specific adjustments for advancements, "[a]fter payment of all outstanding claims, expenses and fees which are properly payable by the Estate and or

Trust." The Agreed Judgment Entry includes a release, in paragraph 5, which states:

> Each and every party hereby agrees to irrevocably release and discharge; each and every Party and his or her agents, representatives, insurers, successors and assigns; the attorney for every party; the Co-Executors and Administrator WWA of the Estate of Dorothy E. Boerger; the Co-Trustees of the Dorothy E. Boerger Trust; and all related persons or entities from *all claims* relating to the distribution of assets of the Estate and Trust of Dorothy E. Boerger. (Emphasis added).

{¶ 5} Subsequent to the filing of the agreed judgment entry, Graham filed a motion for her attorney fees, which was opposed by Chris and David. After the trustee filed documents referencing his final fees for administering the trust, and the court approved an order to pay the final fees owed to the administrator of the estate and his attorney, Jeff filed a motion to pay Graham a caretaking claim of $12,000 as an outstanding debt of the estate and trust. To support his motion, Jeff attached a document drafted by the estate fiduciary recognizing Graham's claim as part of a proposed settlement, but that proposal was never filed, accepted, or signed by any of the parties. The record does not contain any documents to establish whether Graham ever filed a creditor's claim against the estate, or presented a written claim to the co-executors or the administrator, in the manner prescribed by R.C. 2117.06. Chris filed a reply opposing payment of Graham's claim, on the basis that all claims of the beneficiaries were settled in the Agreed Judgment Entry. A Magistrate Report and Suggestion of Settlement was sent to all parties, recommending a compromise by paying $6,000 to satisfy Graham's caretaking claim. All seven siblings objected to the suggested settlement. Five objected

on the basis that it was precluded by the terms of the agreed judgment entry, and two objected to the amount of the compromise.

{¶ 6} On August 14, 2014, the Magistrate overruled the motion for payment of Graham's caretaking claim, upon the ground that paragraph 5 of the settlement agreement irrevocably released and discharged all claims to the distribution of assets of the Estate and Trust. Graham moved to reconsider payment of her claim and/or objections to the Magistrate's Decision. The Magistrate overruled her motion for reconsideration. On November 10, 2014 the trial court adopted the decision of the Magistrate and overruled Graham's objections. From this judgment entry, Graham appeals.

## II. Standard of Review

{¶ 7} The specific issue before us calls for an interpretation of the settlement agreement executed by all the parties. Because resolution of this issue, the interpretation of a contract, is a matter of law, we employ a de novo standard of review.

{¶ 8} The Supreme Court of Ohio, when reviewing a case involving the enforcement of a settlement agreement, declared that "Ohio appellate courts must determine whether the trial court's order is based on an erroneous standard or a misconstruction of the law." *Continental W. Condominium Unit Owners Assn. v. Howard E. Ferguson, Inc.*, 74 Ohio St.3d 501, 502, 660 N.E.2d 431 (1996). Therefore, the Court held that the standard of review to be applied "is whether the trial court erred as a matter of law in dismissing the motion to enforce the settlement agreement." *Id. See also Kilroy v. Peters*, 2d Dist. Montgomery No. 25547, 2013-Ohio-3384, ¶ 38.

### III. The Settlement Agreement Did Preclude Any

### Additional Claims by the Beneficiaries of the Estate

{¶ 9} Graham's sole assignment of error is as follows:

THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT FOUND THAT A SETTLEMENT AGREEMENT DETERMINING THE DEBTS AND ADVANCEMENTS TO BE CHARGED AGAINST THE RESIDUAL SHARES OF THE BENEFICIARIES OF AN ESTATE AND TRUST PRECLUDED PAYMENT OF A CLAIM OF A BENEFICIARY AGAINST THE ESTATE AND TRUST.

{¶ 10} Arguments presented within this assignment of error include an argument that the trial court erred in overruling objections to the Magistrate's Decision, and that the trial court erred by concluding that Graham's caretaker claim had been waived.

{¶ 11} "Where the parties enter into a settlement agreement in the presence of the court, such an agreement constitutes a binding contract." *Spercel v. Sterling Industries,* 31 Ohio St.2d 36, 285 N.E.2d 324 (1972). "It is axiomatic that a settlement agreement is a contract designed to terminate a claim by preventing or ending litigation and that such agreements are valid and enforceable by either party." *Continental W. Condominium Unit Owners Assn. v. Howard E. Ferguson, Inc.*, 74 Ohio St.3d 501, 502, 660 N.E.2d 431 (1996). "Further, settlement agreements are highly favored in the law." *Id., citing State ex rel. Wright v. Weyandt* , 50 Ohio St.2d 194, 363 N.E.2d 1387 (1977).

{¶ 12} In view of these policies favoring settlement agreements, we must look to the terms of the agreement to determine whether the parties agreed to a final resolution of

all claims of the beneficiaries and intended to preclude any further claims against the estate or trust, other than the amounts listed in the agreement. In the case before us, the trial court relied on the express language in the settlement agreement that all parties, including Graham, agreed to irrevocably release and discharge *all claims* relating to the distribution of assets of the Estate and Trust of Dorothy E. Boerger.

{¶ 13} "Generally, courts presume that the intent of the parties to a contract resides in the language they chose to employ in the agreement." *First Capital Corp. v. G & J Industries, Inc.*, 131 Ohio App.3d 106, 115, 721 N.E.2d 1084 (8th Dist.1999), citing *Kelly v. Med. Life Ins. Co.,* 31 Ohio St.3d 130, 509 N.E.2d 411 (1987). "When the terms in a contract are unambiguous, courts cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties." *Alexander v. Buckeye Pipe Line Co.,* 53 Ohio St.2d 241, 246, 374 N.E.2d 146 (1978). "[I]f no ambiguity exists, the terms of the contract must simply be applied without resorting to methods of construction and interpretation." *Buckeye Check Cashing, Inc. v. Madison*, 8th Dist. Cuyahoga No. 90861, 2008-Ohio-5124, ¶ 12.

{¶ 14} As explained by the Eighth District Court of Appeals,

A release ordinarily operates to extinguish a right in exchange for some consideration and effectively operates as an estoppel or a defense to an action by the releasor. As such, it is a contract between parties, enforceable at law subject to the rules governing the construction of contracts. Whether a release operates upon a certain liability depends entirely upon the intention of the parties, which is to be gathered from the language of the release and the state of facts then existing. If the parties to a

release intend to leave some things out of a release, then "their intent to do so should be made manifest." When the terms of a contract are unambiguous, courts will not, in effect, create a new contract by finding an intent not expressed in the language employed by the parties. Moreover, when the parties have negotiated the release with the assistance of legal counsel, and both sides have agreed to the language included in the release, there is an assumption that the parties are fully aware of the terms and scope of their agreement. (Internal citations omitted).

*Weisman v. Blaushild,* 8th Dist.Cuyahoga No. 88815, 2008-Ohio-219, ¶ 24.

**{¶ 15}** We conclude that the language of the release was unambiguous, and was intended to terminate all claims and end the protracted and hostile litigation between the Boerger siblings. The intent of the release was identified in the opening paragraph, which specifically stated that it was "to bring a resolution to this dispute, to allow for the assets of the Estate and Trust to be distributed, and for the Estate to be closed and the Trust terminated." Any claim against the estate assets would necessarily have a direct effect on the amount of each beneficiary's share, prevent distribution of assets, and delay the termination of the estate until the claim's resolution. Graham does not suggest that her caretaking claim was new, so that it was not contemplated at the time the settlement agreement was executed. If her caretaking claim was intended to be left out of the agreement, it should have been identified in the same manner as the outstanding legal fee claims that were expressly excluded from the scope of the agreement. To except her caretaking claim from the release, the trial court would have had to rewrite the contract or add words that were not written or agreed to by all of the parties. We conclude that the

court did not err as a matter of law in its interpretation of the contract in a manner that gives effect to the parties' clear intent to release all claims that any of the parties had against the estate or trust. Graham's sole assignment of error is Overruled.

## IV. Conclusion

{¶ 16} The sole assignment of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

DONOVAN and WELBAUM, JJ., concur.

Copies mailed to:

Andrew T. White
James S. Detling
Joshua Koltak
Diane Birt
Frank Boerger
Gary Brown
Jeffrey Boerger
Theodore Boerger
Thomas Guillozet
Hon. Jason R. Aslinger